OPINION OF THE COURT
Titone, J.
In this action to recover life insurance proceeds, we are called upon to determine whether the trial court properly barred the admission of an X-ray report, recorded by a physician as part of the underwriting process, and expert medical testimony concerning the physician’s impression of the X ray, where the underlying X-ray film was unavailable at trial. Because the courts below improperly concluded that the best evidence rule establishes an absolute bar to the admission of that secondary evidence, without permitting defendant to establish any excuse for its nonproduction, we reverse and grant a new trial.
In October 1985, claimant Andrew Schozer applied for a life insurance policy with defendant William Penn Life Insurance Company. At that time, Schozer paid the policy premium for the first year and was issued a "conditional receipt.” The conditional receipt offered claimant’s beneficiary $100,000 in life insurance coverage, provided that claimant was found to be an acceptable health risk under defendant’s "rules, limits *642 and standards.”[1] The insurance company then embarked on an investigation of claimant’s medical history.
Because defendant’s underwriters believed that claimant’s medical history raised some concerns about a potential heart condition that might have disqualified him from the coverage he sought, defendant requested that Schozer complete a physical examination and have an X ray taken. These procedures were completed on March 20, 1986 by one of defendant’s authorized examiners, Dr. Sidney Dann. The X ray was sent to defendant’s medical director, Dr. Walter Ploss, a radiologist, for analysis. Dr. Ploss concluded in a written report which lies at the core of this dispute that Mr. Schozer’s cardiac-thoracic ratio[2] was "17.3/29.5.” The numbers were followed by the letters "EH”, a notation which, according to defendant, stands for enlarged heart.
On April 9, 1986, Schozer died from a cause unrelated to a heart condition. Since defendant had yet to finally accept or reject claimant’s application for insurance at the time of his death, the terms of the conditional receipt govern the relationship between the parties. After claimant’s death, defendant insurer rejected his application, and returned the premium paid.
In March 1988, plaintiff, decedent’s wife, commenced this action against the insurer to recover the insurance proceeds available under the conditional receipt. Defendant disclaimed liability on the ground that Schozer had an enlarged heart at the time of his application which rendered him an unacceptable risk and thus uninsurable at the standard rate.
During discovery and trial, defendant could not locate the 1986 X ray taken by Dr. Dann, which it claimed had been transferred to a Kansas storage facility. In place of the X ray, defendant sought to introduce Dr. Floss’s testimony and his *643 written X-ray report to establish that Schozer’s X ray would have revealed an enlarged heart. Defense counsel contended that an X ray is a writing subject to the best evidence rule, and because the X ray was lost — a fact sought to be proven through the testimony of the custodian of defendant’s records —defendant should have been permitted to establish the contents of that lost writing by any competent secondary evidence. Plaintiff moved to preclude the evidence, advancing the claim that the best evidence rule sets up an absolute bar to the admission of secondary evidence in the absence of the original X ray.
Supreme Court permitted defendant to elicit testimony from its custodian of records concerning the X ray’s loss outside of the jury’s presence, solely to create a record for purposes of appeal. However, the court declined to pass on whether defendant’s offer of proof on the efforts to locate the lost original was sufficient to establish the X ray’s unavailability. Citing the best evidence rule, the court granted plaintiffs motion in limine to preclude defendant from introducing Dr. Floss’s X-ray report and testimony absent the admission of the X ray. Because references to the X ray surfaced during the trial, the trial court instructed the jurors, over defense exception, that the X ray could not be located and that they should not "draw any inference from this ruling concerning the contents of the x-ray.” Just prior to the close of trial, defendant located the X ray. However, the court refused defendant’s request to permit its introduction. The jury returned a verdict for plaintiff in the amount of $100,000, which represented the face amount of the insurance policy, to which interest, costs and disbursements were added for a total judgment of $151,505.
The Appellate Division affirmed. Without advancing its supporting rationale, the Court held that the X-ray report was "inadmissible without the introduction of the underlying X ray” (197 AD2d 510). For the following reasons, we now reverse, and grant a new trial.
The "oft-mentioned and much misunderstood” best evidence rule simply requires the production of an original writing where its contents are in dispute and sought to be proven (Sirico v Cotto, 67 Misc 2d 636, 637; see also, Trombley v Seligman, 191 NY 400; 57 NY Jur 2d, Evidence and Witnesses, § 247, at 496). At its genesis, the rule was primarily designed to guard against "mistakes in copying or transcribing the original writing” (Fisch, New York Evidence § 81, at 50 *644 [2d ed]). Given the technological advancements in copying, in modern day practice the rule serves mainly to protect against fraud, perjury and "inaccuracies * * * which derive from faulty memory” (ibid.).
Under a long-recognized exception to the best evidence rule, secondary evidence of the contents of an unproduced original may be admitted upon threshold factual findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence (Trombley v Seligman, 191 NY 400, 403, supra; Fisch, New York Evidence §81, at 49 [2d ed]; see also, Fed Rules Evid, rule 1004) and has not procured its loss or destruction in bad faith (Fisch, New York Evidence §§88-89, at 55-56 [2d ed]). Loss may be established upon a showing of a diligent search in the location where the document was last known to have been kept (see, Cole v Canno, 168 App Div 178; Dan v Brown, 4 Cow 483, 491; 57 NY Jur 2d, Evidence and Witnesses, § 262, at 518), and through the testimony of the person who last had custody of the original (see, Fisch, New York Evidence §§ 88-89, at 55-56 [2d ed]). Indeed, the more important the document to the resolution of the ultimate issue in the case, "the stricter becomes the requirement of the evidentiary foundation [establishing loss] for the admission of secondary evidence” (Harmon v Matthews, 27 NYS2d 656, 663, citing People v Dolan, 186 NY 4, 13). In other words, the court should give careful consideration to the possible motivation for the nonproduction of the original in determining whether the foundational proof of loss was sufficient.
Such a mitigating principle is necessary since a strict requirement of the original writing would serve to extinguish otherwise valid legal claims or defenses where a party has, through no mischief or bad faith, lost or destroyed an original. As stated by one commentator, the failure to excuse the loss of an original "would in many instances mean a return to the bygone and unlamented days in which to lose one’s paper was to lose one’s right” (2 McCormick, Evidence § 237, at 76 [Practitioner’s 4th ed]).
The courts of this State have applied this standard formulation of the best evidence rule and its exemption for "unavailable” originals with equal force to an unproduced X ray and the derivative evidence offered in its place to describe its contents (see, See Chang Chiu v Garcia, 75 AD2d 594; Sirico v Cotto, 67 Misc 2d 636, supra). In accordance with this frame *645 work, the original X-ray film must generally be produced to prove its contents (Fed Rules Evid, rule 1002; see also, 5 Weinstein, Evidence If 1001 [2] [01]). In treating an X ray as a "writing,” New York’s scheme parallels the formulation supplied by the Federal Rules of Evidence, which expressly include X rays in the definition of a "photograph”, and in turn define a photograph as a writing subject to the original writing rule (see, Fed Rules Evid, rule 1001 [2]). Indeed, our application of the best evidence rule to X rays is not unique, but is symbolic of an approach followed in a number of States which have either drafted their statutory definitions of a "writing” to include X rays for best evidence rule purposes (see, e.g., NJ Rules of Evid § 801 [e], and 1994 comment; NC Gen Stat § 8-45.1; Ore Rev Stat § 40.550 [3] [Ore Evid Code, rule 1001 (3)]; Tex Rules of Civ Evid, rule 1001 [2]) or have judicially applied the best evidence rule to X rays (see, e.g., Hernandez v Pino, 482 So 2d 450 [Fla App 1986]; Daniels v Iowa City, 191 Iowa 811, 183 NW 415, 416 [1921]; Fuller v Lemmons, 434 P2d 145, 147 [Okla 1967]). An expanded definition of "writings” is employed in recognition of the fact that evidentiary rules concerning the admissibility of originals should be fashioned "with a breadth sufficient to encompass modern techniques for storing and retrieving data” (see, Hippard, Article X: Contents of Writings, Recordings, and Photographs, 20 Hous L Rev 595, 599, n 17).
As in the case of any other lost original, once the absence of an X-ray film is excused, all competent secondary evidence is generally admissible to prove its contents (see, American Natl. Ins. Co. v Points, 81 SW2d 762, 767 [Tex Civ App] [expert testimony of contents of X ray rendered unavailable because located outside State was admissible as secondary evidence of its contents]), provided that its admission does not offend any other exclusionary rule or policy (see, 5 Weinstein, Evidence ]f 1001 [2] [01]). No categorical limitations are placed on the types of secondary evidence that are admissible. Nonetheless, the proponent of such derivative proof has the heavy burden of establishing, preliminarily to the court’s satisfaction, that it is a reliable and accurate portrayal of the original. Thus, as a threshold matter, the trial court must be satisfied that the proffered evidence is authentic and "correctly reflects the contents of the original” before ruling on its admissibility (United States v Gerhart, 538 F2d 807, 809 [8th Cir 1976]; see also, Marion v Coon Constr. Co., 216 NY 178, 182). For example, when oral testimony is received to establish the *646 contents of an unavailable writing, the proponent of that proof must establish that the witness is able to recount or recite, from personal knowledge, "substantially and with reasonable accuracy” all of its contents (Richardson, Evidence § 599, at 596 [Prince 10th ed], citing Edwards v Noyes, 65 NY 125; 2 McCormick, Evidence § 231, at 62 [Practitioner’s 4th ed]). Once a sufficient foundation for admission is presented, the secondary evidence is "subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence, with [the] final determination left to the trier of fact” (Gerhart, 538 F2d, at 809, supra).
Placement of this heavy foundational burden on the proponent of secondary evidence to prove its accuracy as a derivative source of proof serves to reduce the dangers of fraud and prejudice identified by Judge Simons in dissent as the basis for his unconditional opposition to the receipt of secondary evidence of an X ray (see, dissenting opn, Simons, J., at 651). Indeed, those same dangers exist any time an original document is lost — even when the writing is a contract or lease— and a witness is called upon to recount its terms. In other words, the opponent is always at a disadvantage when cross-examining a witness about a lost document, but no valid reason exists to assume that some greater degree of mistrust should be placed on the loss of an X ray so as to warrant application of a different rule. Additionally, the proponent of secondary evidence will naturally be discouraged from introducing "less convincing secondary evidence” because "an opponent may cause the jury to draw an unfavorable inference from such a strategy” (Hippard, Article X: Contents of Writings, Recordings, and Photographs, 20 Hous L Rev 595, 611).
We reject the conclusion of Judge Simons in dissent and the courts below that Hambsch v New York City Tr. Auth. (63 NY2d 723, 725) and Marion v Coon Constr. Co. (216 NY 178, 182, supra) created an absolute best evidence rule bar to the admission of secondary evidence in the absence of an original X-ray film. In Hambsch, although the Court concluded that expert testimony should not have been admitted at trial without presentation of the underlying X ray, no best evidence rule objection was lodged and the Court’s holding cannot be construed as addressing the issue (63 NY2d, at 725). Similarly, in Marion, the Court determined that expert opinion testimony should not have been admitted in the absence of the underlying X ray, but its holding rested ultimately on the *647 conclusion that there was no proper foundation to ensure that the missing X ray in fact portrayed the plaintiffs fracture (216 NY, at 182). Thus, the existing case law does not per se preclude a party from introducing secondary evidence of an X ray, if the necessary showing of unavailability is made.
Under the aforementioned guiding principles, the trial court erred in refusing to permit defendant to establish that the X ray was lost, and in ruling that the unavailability of the X ray unconditionally precluded defendant from introducing secondary evidence of its contents.[3] Contrary to the conclusion reached by our dissenting colleague Judge Smith, the fact that the X ray was found prior to the close of trial does not render the admissibility of the proffered evidence a question of limited importance (see, dissenting opn, Smith, J., at 652). That may have been true had the X ray ultimately been admitted into evidence. However, the trial court properly exercised its discretion in precluding admission of the X ray after all witnesses had testified and trial strategies had been fully executed (see, Zarrelli v Littauer Hosp., 176 AD2d 1181; Stern v Calzado, 163 AD2d 299), and the primary focus of our inquiry must remain whether the trial that defendant received was properly and fairly conducted. We conclude that the erroneous evidentiary ruling in this case so tainted the first trial that a new trial is warranted. Because of the procedural disposition of this case, we need not address defendant’s remaining contention.
Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial granted.

. The conditional receipt provided that, unless each of the listed conditions was "fulfilled exactly, no insurance will become effective prior to policy delivery”. In the event that the applicant failed to comply with any of the conditions, the receipt would be considered null and void and defendant would be liable merely for return of the premium paid. The list of conditions included the following relevant provision: "all Proposed Insureds must be on the Effective Date * * * risks acceptable to the Company under its rules, limits and standards on the plan and for the amount applied for without modification and at the rate of premium paid with the application.”

. According to trial testimony, the cardiac-thoracic ratio is a comparison of the diameter of the heart with the diameter of the thorax. The ratio is then compared to standardized tables to ascertain whether a claimant has a normal or enlarged heart, based on that person’s height and weight.

. Although Judge Smith in dissent concludes that defendant’s "testimony on the search for the X ray was not sufficient” to establish its loss (see, dissenting opn, Smith, J., at 654), we decline to rule on the sufficiency of defendant’s proof on that issue, which was submitted merely to create a record and without the benefit of a full evidentiary hearing. That factual determination rests within the province of the trial court in the first instance — a determination which was bypassed in this case because of the trial court’s erroneous placement of an absolute bar on the admission of secondary evidence.