■ IRENA GLATTER et al., Respondents, v MARK BORTEN et al., Appellants. [649 NYS2d 677] —Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered on or about February 27, 1996, which denied defendants' motion *in limine* to preclude plaintiffs' testimony concerning the authenticity of documents allegedly executed by the decedent, unanimously reversed, on the law, and the motion to preclude testimony under the Dead Man's Statute, and to preclude the facsimile documents themselves under the best evidence rule, is granted, without costs.

Otto Teitler died intestate in September 1994, seised of two parcels of real estate which are here in question—a 6-story, 11-unit brownstone apartment building at 538 East 89th Street in Manhattan, and a beach residence in the Pines section of Fire Island—worth an approximate aggregate of $2 million. Defendants Adelman and Merlin are administrators of the Teitler estate, and defendants Borten and the law firm are their legal counsel. Plaintiffs and their associates have been occupying six of the apartment units in the brownstone since the decedent's death, allegedly without paying rent.

Letters of administration were granted in September 1994. One month later, after the administrators had challenged plaintiffs' right to occupancy of the brownstone, this action—essentially defensive in nature—was commenced, seeking damages for trespass, unlawful attempt to evict, injunctive relief against eviction, declaratory judgment as to plaintiffs' rights in the premises, and imposition of a constructive trust on the premises in plaintiffs' favor. Plaintiffs moved simultaneously for a preliminary injunction.

The complaint alleged that plaintiffs had occupied the six units in question since July 1994, under "oral agreement[s]" dating from 1981 and 1991, respectively, and "reaffirmed from time to time" through July 1994, and that the decedent had promised to make a will granting plaintiff Irena Glatter a life tenancy in the building[1] in return for the "love, companionship, care and attention" she and her husband had shown the decedent over the years. Within days, plaintiffs' former counsel (plaintiffs are now proceeding *pro se*) confirmed to counsel for the administrators that there was no lease to support this

---

1. No such will has ever been found.

claim, and that all pertinent documentation had been annexed to the moving papers.

Defendants answered the complaint and counterclaimed for declaratory relief as well as for ejectment and damages for wrongful use and occupancy. They also cross-moved for summary judgment on grounds of the Statute of Frauds, and specifically, the Dead Man's Statute. Only thereafter did plaintiffs produce a document denominated a 4-year lease agreement, dated July 1, 1994, purporting to grant plaintiffs tenancy for all six units in question, at an *aggregate* rental of $1,000 per month. Not only that, but plaintiffs also claimed that all the rent for the four years had been prepaid in full, which would explain why they had no rent receipts. Plaintiffs' explanation for the sudden materialization of this purported lease, hard on the heels of defendants' cross motion for summary judgment on the ground of Statute of Frauds, was that in the rush to commence this litigation, they had "completely forgot[ten]" about the document.

Defendants immediately challenged the genuineness and admissibility of this document, restating their objection under the Dead Man's Statute, *inter alia*, and moved for severance, at which point the trial court ordered an immediate hearing on the narrow issue of admissibility (*see, Phillips v Kantor & Co.*, 31 NY2d 307). No sooner had the court ordered such a trial on stipulation of the parties than plaintiffs produced still another surprise. An amended verified complaint included a paragraph alleging the existence of the newly discovered lease agreement, and another paragraph alleging the existence of a "contract of sale" between the decedent and "Irene *[sic]*", also dated July 1, 1994. The order for trial was expanded to include the admissibility of this latest document, which purported to transfer all of the decedent's interest in the brownstone to Irena in consideration for the "advance rent payment of $45,000 * * * received in cash * * * during the period of Apr. 1992 through July 1994" under the lease agreement, as well as the Fire Island property in consideration for $5,000 in cash received during the same period.

No originals of these suspicious documents—allegedly executed simultaneously, and yet facially contradictory—were ever produced by plaintiffs.[2] What were produced were photocopies of facsimiles purportedly transmitted to plaintiffs by the decedent. However, the documents in the record bear

---

2. One major consistency between the two documents was the resultant windfall to plaintiffs—lease of prime Upper East Side residential space at about 8.3% of fair market rental (according to an advertisement submitted

none of the standard indicia of facsimile transmission. Indeed, defendants denied ever having such originals in their possession. When plaintiffs were unable to produce the original documents, defendants moved *in limine* for a hearing on their objections based on the Dead Man's Statute and the best evidence rule *(see, Endervelt v Slade,* 214 AD2d 456).

The best evidence rule requires that a party relying on a disputed document may produce a substitute for the original writing only if the absence or unavailability of the original is satisfactorily explained *(Schozer v William Penn Life Ins. Co.,* 84 NY2d 639, 644). Plaintiffs never pretended possession of the original lease agreement or contract of sale. The best they could offer was a photocopy of a purported facsimile. That these documents bore none of the normal markings of a facsimile transmission merely underscores the concern of courts in accepting such secondary evidence as authentic *(see, People v Guzman,* 151 Misc 2d 289). For secondary evidence to be admissible, the proponent must establish that the original writing has been in existence, that it is genuine (if authenticity is questioned), and that a proper excuse exists for its nonproduction (Prince, Richardson on Evidence § 10-201 [Farrell 11th ed]). One such excuse is that the original is in the possession of an adversary who, after due notice, has failed to produce it; evidence of such adverse possession is required *(id.,* at § 10-209). Plaintiffs were never able to meet that requirement. Their bald and unsubstantiated allegation that such documents were faxed by the decedent from originals now in the custody of defendants was met by the latter's testimonial evidence that a thorough search of records had revealed many lease agreements, but none related to plaintiffs; in short, no such documents ever existed. The trial court ruled, in effect, that this shifted the burden from plaintiffs for establishing a foundation for the admissibility of secondary evidence; this was error.

An 1883 decision cited by the trial court *(Kearney v Mayor of City of N. Y.,* 92 NY 617) not only did not shift the burden of proof in such circumstances, but it reiterated our long-established adherence to the rule that the court is never bound to credit the statements of an interested witness. The principle of precluding the testimony of an interested party has been incorporated as a Statute of Frauds in our Dead Man's Statute (CPLR 4519). Irena was permitted, over continuing objection, to testify that the "original facsimile" was in the hands of her handwriting expert, to determine the authenticity of the

by plaintiffs), and sale of the two properties at about 2.5% of fair market value.

decedent's signature. Aside from the fact that defendants were prepared to challenge that question as well, the trial court misconstrued the effect of the Dead Man's Statute—that even if the signature were authentic, that would not establish the authenticity of the document itself, which was an issue about which Irena was incompetent to offer testimony, as a matter of law (*see, Matter of Wood*, 52 NY2d 139, 143-144). The salutary purpose of our somewhat archaic rule—to protect estates from perjurious claims (Richardson, *op. cit.*, § 6-121) and post-death fabrications (*Poslock v Teachers' Retirement Bd.*, 88 NY2d 146, 152)—is most appropriately applied in this case.

Motion for clarification is granted, and, upon clarification, the prior unpublished decision and order of this Court entered on September 12, 1996 is recalled and vacated, and a new decision and order is substituted therefor. Concur—Sullivan, J. P., Milonas, Wallach, Ross and Nardelli, JJ.