OPINION OF THE COURT
Memorandum.
Judgment unanimously affirmed without costs.
*37 In this action for breach of a contract to provide public adjustment services in regard to defendant Marenga’s fire insurance claim, plaintiff NACO, Inc., doing business as National Adjustment Co., alleges that Marenga failed to compensate it at the agreed upon rate of 6% of the claim proceeds. Marenga in turn claimed that NACO’s representative, Steven Gilbert, solicited the contract outside the hours permitted by Insurance Law § 2108 (p) and its implementing regulations, that the contract papers were facially defective because certain information was not completed, and that, in any event, his right to cancel the contract thereby extended beyond the three-day period provided by the regulations (11 NYCRR 25.8).
Insurance Law § 2108 (p) provides, in pertinent part:
“No adjuster shall have any right to compensation from any insured for or on account of services rendered to such insured as a public adjuster unless such right to compensation is based upon a written memorandum, signed by the party to be charged, and specifying or clearly defining the amount or extent of such compensation. The superintendent [of insurance] shall establish and prescribe regulations: . . .
“(2) to provide for compliance with article ten-A of the personal property law relating to door to door sales . . . .”
The regulations referred to in the above provision, as pertinent to the present action, include 11 NYCRR 25.3 (a), which provides that “No person licensed to act as a public adjuster . . . shall, between the hours of 6 p.m. and 8 a.m., directly or indirectly, solicit the, adjustment of a loss from an insured or from any broker or other person, whether by personal interview, by telephone or by any other method, nor shall accept any order, commission or contract for the adjustment of any loss which is within the scope of section 2108 of the insurance law . . . .” 11 NYCRR 25.6 and 25.13 set forth the form and requirements for a compensation agreement, including that it must contain the names and addresses of the adjuster and the insured and that it must be “signed by the public adjuster . . . and by the insured, or other party to be charged” (11 NYCRR 25.6 [c]). No penalty is designated for failure to comply; however, the insured’s time to cancel does not begin to run until compliance is had (11 NYCRR 25.9 [e]).
11 NYCRR 25.8 and 25.9 discuss the insured’s right to cancel by midnight of the third business day after the date on which the insured signed the agreement (11 NYCRR 25.8 [a]), require that an adjustment agreement must contain two copies of a no *38 tice of cancellation, completed by the adjuster (11 NYCRR 25.9 [d]), and require that the adjuster must orally advise the insured of the right to cancel.
In addition, 11 NYCRR 25.9 (e) specifies that “[u]ntil the public adjuster has complied with the requirements of this section, the insured may cancel the agreement by notifying the public adjuster in any manner and by any means of his intention to cancel. The period prescribed by section 25.8 (a) of this Part shall begin to run from the time the public adjuster complies with this section.”
In Ochocinska v National Fire Adj. Co. (177 AD2d 954 [1991]), the Fourth Department held that despite the adjuster’s improper dating of the cancellation notice, plaintiff insured’s receipt of the defendant adjuster’s services for a period of many months, combined with the lack of prejudice stemming from the error, entitled the adjuster to the agreed upon compensation (177 AD2d at 955). In the present case, the agreement as presented to the court facially complies with the provisions of 11 NYCRR 25.9. The record establishes that defendant Marenga signed the agreement in which he acknowledged receiving the two cancellation notices. Under the circumstances, the court properly considered and credited Gilbert’s testimony that the proper number of copies of the cancellation agreement were provided to Marenga and that Gilbert otherwise complied with the requirements set forth in the regulations. 11 NYCRR 25.9 does not address the “time and date of agreement” omitted from the main body of the contract; it only requires that the date of agreement and the last possible date of cancellation be provided upon the notices of cancellation, which in fact were set forth thereon.
The court’s determination of credibility and weight of the evidence are supported by the record (see Jones v Hart, 233 AD2d 297 [1996]). The major credibility dispute in this action was the propriety of solicitation of the agreement and the authenticity of the contract documents. The court was entitled to credit Gilbert’s testimony that the agreement was solicited within legal hours and that he complied with the written and oral cancellation notice requirements. The Marengas themselves testified that NACO had performed services pursuant to the contract. Furthermore, on the basis of Gilbert’s testimony to an extensive search of his office’s files and premises, the court properly admitted a disputed copy of the contract into evidence (see Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639 *39 [1994]). It then properly determined, on the basis of its credibility determinations and the weight of the credible evidence (id. at 646), that the contract was valid.
As to the denial of the cross motion for summary judgment brought up for review by the appeal from the judgment, the court properly determined that the conflicting affidavits of the parties submitted thereon raised material issues of fact which were subsequently resolved upon the trial.
Doyle, EJ., Winick and Skelos, JJ., concur.