OPINION OF THE COURT
Caesar Cirigliano, J.
*804 Defendant was indicted for assault in the first degree, assault in the second degree and assault in the third degree arising out of an altercation between the defendant and Wilfredo Acevedo, the complainant. During the trial, the People offered the testimony of the owner of the store in which the altercation began who, although not a witness to the events, had viewed the videotape of the store’s surveillance camera. The owner’s testimony was offered to establish what the videotape had showed, the actual tape having been lost by the time of trial. The defendant objected and this court sustained that objection based on the best evidence rule. In that the application of the best evidence rule to a videotape appears to be one of first impression in New York, the court is now setting forth its decision in writing.
The testimony at trial was that the complainant was working as the manager of a laundromat when the defendant entered the store seeking to exchange a laundry product which the defendant’s nephew had just purchased by mistake. An argument ensued which escalated into a physical confrontation and ended with the complainant suffering a permanent crippling injury. The defense was justification and the primary issue at trial was who was the initial aggressor: the defendant or the complainant?
As per the People’s offer of proof, after the incident, the owner viewed the laundromat’s surveillance videotape but did not preserve it or turn it over to the police and it no longer existed at the time of trial. The People proposed to call the owner and have him testify to what he had observed on the videotape.
The best evidence rule requires production of an original writing where its contents are in dispute and sought to be proven (Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643 [1994]). At its genesis, the rule was primarily designed to guard against mistakes in copying or transcribing the original (Fisch, New York Evidence § 81 [2d ed]). In New York, the definition of a “writing” parallels the formulation supplied by the Federal Rules of Evidence and now includes photographs and X-rays (Schozer at 645; see Fed Rules Evid rule 1001 [2]) as well as motion pictures and videotapes (id.). Thus, the original videotape had to be produced in court before a witness who did not observe the events recorded thereon could testify to what he had observed on the tape.
That said, under a long-recognized exception to the best evidence rule, secondary evidence of the contents of an unproduced *805 original may be admitted upon threshold factual findings that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence and that the derivative proof “is a reliable and accurate portrayal of the original.” (Schozer at 645.)
In Schozer, in an action on an insurance policy, the defendant lost the X ray of the plaintiffs chest after the defendant’s radiologist had reviewed and analyzed it. Based thereon, the trial court precluded the defendant from introducing the radiologist’s report and testimony concerning what the X ray had showed. After the Appellate Division affirmed, the Court of Appeals reversed and granted a new trial. In Schozer the Court of Appeals held that the trial court should not have precluded the radiologist’s report and testimony without having given the defendant the opportunity of establishing that such testimony correctly reflected all of the contents of the original substantially and with reasonable accuracy (id.).
Here, the videotape no longer existed, its owner, a third party, having failed to preserve it. Its unavailability was therefore explained (cf. Bradley v State, 2003 WL 22300312, 2003 Ark App LEXIS 756 [Ark Ct App, Oct. 8, 2003] [where surveillance videotape had not been lost or destroyed, its absence from court had not been accounted for]). Consequently, the admissibility of the owner’s testimony as to what it showed turned on whether the People had carried their “heavy burden” of establishing that the witness was able to recount or recite, from personal knowledge, substantially and with reasonable accuracy all of its contents (Schozer at 645-646).
Schozer, however, concerned an X ray, in other words, one photograph. And while an expert might well be able to recount or recite substantially and with reasonable accuracy all of the pertinent contents of one such photograph, the same cannot be said of the innumerable details of the literally thousands of images that constitute videotape footage. Inevitably, the witness’ testimony would be no more than a summary of his interpretation of what he had seen on the tape and not a reliable and accurate portrayal of the original.
This court’s research had disclosed no reported decisions in this state applying the best evidence rule to motion pictures or videotape footage and only one — albeit in dictum — even nationwide. Thus, in United States v Bennett (363 F3d 947 [2004]), the Ninth Circuit reversed a conviction where a police witness was allowed to testify to a computer generated global *806 positioning system (GPS) display he had observed without the display being produced in court. The Bennett court stated: “Proffering testimony about Bennett’s border-crossing instead of introducing the GPS data, therefore, was analogous to proffering testimony describing security camera footage of an event to prove the facts of the event instead of introducing the footage itself.” (Id. at 953.) The court held that the best evidence rule had been violated finding such testimony to be insufficiently reliable as a matter of law (Id. at 954).
Based thereon, this court holds that the best evidence rule precludes a witness from testifying to an altercation he observed on a surveillance videotape in the absence of the tape.