OPINION OF THE COURT
Jack M. Battaglia, J.
In its complaint against Munkacs Car Service Ltd., Commissioners of State Insurance Fund seek $12,851.77, representing an unpaid workers’ compensation insurance premium and statutory collection charges, alleging causes of action for breach of contract and on an account stated. In its verified answer and counterclaim, defendant admits having secured a workers’ compensation policy from plaintiff, but denies owing any premium, and seeks a refund of $4,021.62, representing premium amounts already paid. At the conclusion of plaintiffs evidence at trial, defendant moved for dismissal on the ground that plaintiff had failed to make a prima facie case. The parties were invited to make written submissions on the motion, and each did so. The court now grants the motion.
Prior to trial, plaintiff had moved for summary judgment, and its motion was granted in part by the Honorable Peter Sweeney in a decision/order dated April 23, 2004. The only documentary evidence submitted in support of the motion was a computer printout described in the supporting affidavit as a “statement of account.” Justice Sweeney granted partial summary judgment “on liability insofar as no material issue of triable fact exists as to whether the Defendant requested and received an insurance policy from Plaintiff.” The matter was “set for trial as to damages only.”
At the beginning of trial, the court noted that, although defendant admitted in its verified answer and counterclaim and in its affidavit in opposition to plaintiff’s motion for summary judgment that it had obtained workers’ compensation insurance from plaintiff, there was no proof as to the terms of the policy since neither party offered the policy as evidence on the motion. The court indicated to plaintiffs counsel its view that, in order to support its claim for damages for breach of the insurance agreement, the terms of that agreement must be proved — that is, the policy itself.
*804 Plaintiff presented as its only witness at trial its employee Saleha Najibullah. Ms. Najibullah had no personal knowledge of the insurance agreement between the parties. Her testimony served essentially as a vehicle for the introduction into evidence of various documents, and to explain the general nature of the documents and plaintiff’s practices and procedures. Through Ms. Najibullah, the following documents were admitted into evidence: application for New York workers’ compensation and employers’ liability policy dated October 17, 2000; workers’ compensation and employers’ liability policy; a computer printout designated “Declaration”; a computer printout designated “Statement of Account”; simplified audit information form and premium audit; a computer printout described as an “audit bill”; and various papers from the Premium Audit Department Manual and New York Workers’ Compensation and Employers’ Liability Manual.
Most important for present purposes is the document headed “Workers’ Compensation and Employers’ Liability Policy.” Plaintiff initially presented a reproduction of a document, marked with the legend “Rev. 11/91,” that was so poorly reproduced that various sections were obliterated. Defendant objected to the admission of the document on best evidence grounds, and its objection was sustained. (See Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643-646 [1994].) When plaintiff was unable to produce an “original” of the document during the two days during which it presented its case, the court granted its application to supplement the record with the “original.”
The court did receive a printed workers’ compensation and employers’ liability policy with the legend “Rev. 11/91,” accompanied by a similar document with the legend “Rev. 6/95.” The latter document would presumably have been part of the insurance agreement between the parties, but no copy was marked as evidence at trial. Although counsel’s forwarding letter states that “[b]oth versions are identical save for the revision date,” a review of the two documents reveals that the documents are different. Specifically, they differ in the general section, subsection c; part two, subsections c and h; part four, subsections c, d and h; and part five, subsections d and e.
Even assuming, however, that the document is properly in evidence, it is insufficient to establish the terms of the insurance agreement between the parties. The document provides: “This policy includes at its effective date the Information Page and all *805 endorsements and schedules listed there.” (General section, subsection a.) Neither the information page, nor any endorsement or schedule, was introduced into evidence.
Ms. Najibullah’s testimony was consistent with the clear terms of the policy document. She testified that, in addition to the policy document, the insured was sent a document, similar to the declarations page that most of us have seen with our automobile insurance policies. The Fund does not retain a copy of the additional document in its files related to the insured, but can generate a copy with its computer system. Ms. Najibullah provided no explanation for not having generated a copy for this trial, and the Fund’s counsel did not ask leave to supplement the record with a copy.
It is clear, therefore, from plaintiffs own evidence that the insurance agreement between the parties is not before the court, and the question then becomes whether plaintiff can make a prima facie case for a premium owed, either on a breach of contract cause of action or on an account stated, without the terms of the insurance agreement in evidence.
First, as to the cause of action for breach of contract, the court concludes that plaintiff has not proved a prima facie case. When an agreement has been reduced to a writing, the writing must be produced, or sufficient explanation made, together with a showing that the secondary evidence of the writing’s contents is reliable. (See Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d at 643-646; Mahaney v Carr, 175 NY 454, 461-462 [1903]; Bell Atl. Yellow Pages v Havana Rio Enters., 184 Misc 2d 863, 866-867 [Civ Ct, NY County 2000].) Although these principles should come as no surprise to plaintiff (see Commissioners of State Ins. Fund v Kassas, 5 Misc 3d 1012[A], 2004 NY Slip Op 51337[U], *1 [Civ Ct, NY County 2004]), plaintiff made no attempt to prove with secondary evidence the contents of the missing portion(s) of the insurance agreement, or to explain why the entire agreement was not before the court.
Plaintiff maintains, however, that it need not prove the insurance agreement as part of its prima facie case, citing a number of appellate court decisions for the proposition that “[p]lamtiff s unrebutted business records, which included the insurance application, audit worksheets and resulting invoices and statements of account for a balance due, were sufficient to make out a prima facie showing of entitlement to judgment as a matter of law.” (See Commissioners of State Ins. Fund v Country Carting Corp., 265 AD2d 158, 158 [1st Dept 1999]; see also Commission *806 ers of State Ins. Fund v Allou Distribs., 220 AD2d 217, 217 [1st Dept 1995]; Family Coatings v Michigan Mut. Ins. Co., 170 AD2d 816, 817 [3d Dept 1991]; Liberty Mut. Ins. Co. v Thalle Constr. Co., Inc., 116 F Supp 2d 495, 499 [SD NY 2000].) It is not clear from the decisions, however, that the terms of the policy were not proved, and other decisions have noted the Fund’s proof of “the policy itself” in making its prima facie showing. (See Commissioners of State Ins. Fund v Albany Capitaland Enters., Inc., 18 AD3d 934, 935 [3d Dept 2005]; see also Liberty Mut. Ins. Co. v Star Indus., Inc., 1997 US Dist LEXIS 23218, *6 [ED NY, May 27, 1997] [“the workers compensation insurance policies in issue and the schedules and endorsements applicable to them”].)
Moreover, at least two of the decisions cited by plaintiff (see Commissioners of State Ins. Fund v Country Carting Corp., 265 AD2d 158 [1999]; Commissioners of State Ins. Fund v Allou Distribs., 220 AD2d 217 [1995]), and the only cited decisions that address other claims by plaintiff, may be addressed to a cause of action on an account stated (see also Commissioners of State Ins. Fund v Beyer Farms, Inc., 15 AD3d 273, 274 [1st Dept 2005]), a cause of action asserted here and discussed below.
Plaintiff argues further, however, that it is unnecessary to prove the terms of the policy because, once it was established, as it was by Justice Sweeney’s order, that a policy was issued to defendant, then the Workers’ Compensation Law would dictate both the persons covered and the computation of the premium. Specifically, plaintiff contends that, as a matter of law, all employees of a corporate employer are covered against work-related injury under a policy issued to the employer, and a premium may be charged based on any risk of work-related injury to all those employees. Plaintiff cites in support Commissioners of State Ins. Fund v Rivington Farm Dairy (16 AD2d 58 [1st Dept 1962]), as well as Matter of Mihalaris v UTOG 2-Way Radio (299 AD2d 677 [3d Dept 2002]) and Livery Owners Coalition of N.Y. v State Ins. Fund (152 Misc 2d 905 [Sup Ct, NY County 1992]). As will appear, however, none of the cited authorities supports plaintiffs contentions.
As previously noted, plaintiff introduced into evidence defendant’s October 17, 2000 application for coverage. In that application, defendant described its “business operations” as “ambulate service,” and indicated that it employed two persons for “ambulate (med[ical] transportation]).” Also introduced into evidence were audit documents showing that defendant’s *807 “earned” premium was determined by the “payroll” for 10 radio-dispatch cars that provide taxi or public livery service. Plaintiff’s witness, Ms. Najibullah, testified from these and other documents in evidence that defendant’s earned premium was computed according to the business classification code for taxi and livery services, based upon the manner in which defendant’s 10 cars were used, even though defendant’s initial premium was computed according to the classification for an ambulate service and no vehicles were identified by the auditor as being engaged in that kind of service.
Plaintiff contends that the insurance agreement provided coverage for all of defendant’s employees — namely, the drivers of the 10 cars used for taxi or livery services — and that defendant is obligated to pay the premium for that coverage even though defendant applied for coverage for two employees that were engaged in ambulate service. But plaintiff points to no provision in the portion of the policy in evidence that says that, and cites no provision of the Workers’ Compensation Law that requires it.
The cases cited by plaintiff stand for important policies and principles: that there is a “goal of expanding workers’ compensation coverage” (see Livery Owners Coalition of N.Y. v State Ins. Fund, 152 Misc 2d at 907); that the Legislature intended “to provide broad workers’ compensation coverage to taxicab drivers” (see Mihalaris v UTOG 2-Way Radio, 299 AD2d at 678); and that “if there is a reasonable risk that the Workmen’s Compensation Board would hold persons to be employees rather than independent contractors, it is fair to infer that the parties intended premiums to be paid in respect of such persons” (see Commissioners of State Ins. Fund v Rivington Farm Dairy, 16 AD2d at 60 [emphasis added]).
But none of these decisions addresses the question raised by plaintiffs own evidence, or requires the conclusion that defendant here owes a premium calculated upon the payroll of the drivers, even assuming plaintiff has no burden to show that they are defendant’s employees or has met it. Plaintiff may be correct that defendant was required by law to obtain workers’ compensation coverage for the drivers. “The Workers’ Compensation Board is the government agency which enforces the Workers’ Compensation Law . . . [and] [i]t has imposed fines on livery cab base owners for their failure to pay premiums assessed against them due to owner-operators of the livery cars.” (Livery Owners Coalition of N.Y. v State Ins. Fund, 152 Misc 2d *808 at 906.) Plaintiff makes no showing that it may enforce the law by seeking damages for breach of a contract of insurance that does not by its terms provide coverage.
Unless the applicable statute or regulations require otherwise, the insurance agreement here is to be treated as any other contract, interpreted and applied according to its terms and the intent of the parties. (See McGrail v Equitable Life Assur. Socy. of U.S., 292 NY 419 [1944].) Without the terms of the contract, the court cannot determine the damages for its breach — specifically, any premium due and owing to plaintiff for the coverage provided, rather than any coverage that should have been provided.
Plaintiff also has asserted a cause of action on an account stated. Plaintiff alleges in its complaint that defendant sent “monthly, full and true accounts of the indebtedness owed,” $12,851.77, “which account statements were . . . accepted without objection” by defendant. These allegations were denied in defendant’s verified answer. Plaintiffs only evidence in support of this cause of action is a computerized statement of account, explained by its witness. The printout shows an entry for November 9, 2001, designated “FINAL EP,” final earned premium, and a “Bill Amount” for $7,833.62; and an entry for December 12, 2003, designated “Coll. Fee,” collection fee, and a “Bill Amount” of $2,317.53. Ms. Najibullah testified solely on the basis of the printout that statements were sent to defendant on the dates and for the amounts specified.
“ ‘An account stated is an account balanced and rendered, with an assent to the balance express or implied’ . . . [W]hile the mere silence and failure to object to an account stated cannot be construed as an agreement to the correctness of the account, the factual situation attending the particular transactions may be such that, in the absence of an objection made within a reasonable time, an implied account stated may be found.” (Interman Indus. Prods. v R.S.M. Electron Power, 37 NY2d 151, 153-154 [1975], quoting Volkening v DeGraaf, 81 NY 268, 270 [1880].)
It is axiomatic, but often forgotten, that “an account stated cannot be made the instrument to create liability when none exists.” (See Gurney, Becker & Bourne v Benderson Dev. Co., 47 NY2d 995, 996 [1979].) That is not a problem for plaintiff here, however, if only for Justice Sweeney’s ruling on summary judgment.
*809 Plaintiff did not introduce into evidence a copy of either of the two statements listed on the statement of account, and provided no evidence that either was mailed to defendant, nevermind received. “Generally, proof of proper mailing gives rise to a presumption that the item was received by the addressee . . . The presumption may be created by either proof of actual mailing or proof of a standard office practice or procedure designed to ensure that items are properly addressed and mailed.” (Residential Holding Corp. v Scottsdale Ins. Co., 286 AD2d 679, 680 [2d Dept 2001].) Plaintiff here presented neither. Moreover, Ms. Najibullah did not testify that it was part of her duties to ensure that any office practices with respect to the mailing were complied with, or that she had actual knowledge that any such practices were complied with as to statements to defendant. (See Viktor Gribenko, M.D., P.C. v Allstate Ins. Co., 10 Misc 3d 139[A], 2005 NY Slip Op 52201[U], *2 [App Term, 2d & 11th Jud Dists 2005]; Contemp. Med. Diag. & Treatment, P.C. v Government Empls. Ins. Co., 6 Misc 3d 137[A], 2005 NY Slip Op 50254[U], *2 [App Term, 2d & 11th Jud Dists 2005].)
Finally, with respect to the alleged cause of action on an account stated, plaintiff presented no evidence that defendant expressly agreed to the amount of the earned premium or failed to object to any statement of account that it may have received. Plaintiff’s auditor noted on the simplified audit information form admitted into evidence that defendant’s representative refused to sign the form.
In short, plaintiffs evidence at trial failed to establish prima facie damages sustained on its cause of action for an account stated. (See Commissioners of State Ins. Fund v Kassas, 5 Misc 3d 1012[A], 2004 NY Slip Op 51337[U], *1-3.)
As to defendant’s counterclaim for a refund of the amount it allegedly paid on the initial premium, “[a] counterclaim against the State Insurance Fund is only cognizable in the Court of Claims.” (See Commissioners of State Ins. Fund v Trio Asbestos Removal Corp., 9 AD3d 343, 345 [2d Dept 2004]; see also Commissioners of State Ins. Fund v J.D.G.S. Corp., 253 AD2d 368, 369 [1st Dept 1998].)
Judgment is awarded to defendant, dismissing plaintiff’s complaint, and to plaintiff, dismissing defendant’s counterclaim.