People v Jackson (2020 NY Slip Op 07744)





People v Jackson


2020 NY Slip Op 07744


Decided on December 23, 2020


Appellate Division, Fourth Department


Bannister, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, NEMOYER, TROUTMAN, AND BANNISTER, JJ.


614 KA 16-00658

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
TAMIYA JACKSON, ALSO KNOWN AS TAMIYA N. JACKSON, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


Bannister, J.
 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered March 16, 2016. The judgment convicted defendant upon a jury verdict of grand larceny in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Opinion by Bannister, J.:
Defendant appeals from a judgment convicting her upon a jury verdict of grand larceny in the third degree (Penal Law § 155.35 [1]), arising from the theft of wireless speakers valued in excess of $3,000 from a Target store in the Town of Greece. Prior to trial, the People moved in limine for permission to introduce testimony from the store's asset protection team leader (APT leader) regarding the contents of destroyed video surveillance footage that had depicted the incident. According to the People, on the day he became aware of the missing speakers, the APT leader viewed the video surveillance footage from the night before and, on that footage, he observed a male and a female working in concert to load the speakers into a shopping cart and further observed the female, i.e., defendant, pushing the cart past all points of sale and exiting the store with the male. The APT leader burned a limited amount of the footage onto a DVD, including footage that showed defendant and the male suspect leaving the store with a shopping cart containing merchandise, and he printed still photographs of both suspects. In the weeks that followed, the APT leader recognized defendant on two occasions when she visited the same Target store. However, by the time she was determined to be a suspect, the original surveillance footage, including the portion showing the speakers being loaded into the cart that was not preserved on DVD, had been destroyed consistent with the store's customary procedures. Defendant opposed the motion, arguing, inter alia, that the proposed testimony of the APT leader regarding the contents of the unpreserved footage would violate the best evidence rule. Supreme Court granted the People's motion, determining, inter alia, that the People met their heavy burden of establishing that the APT leader had a recollection of what he observed on the video footage and could testify in detail about it and, thus, that the proposed testimony came within an exception to the best evidence rule. The central issue on this appeal is whether the court erred in admitting the APT leader's testimony regarding the contents of the unpreserved footage under the relevant exception to the best evidence rule. We conclude that the court did not err in admitting the testimony in question.
The best evidence rule "simply requires the production of an original writing where its contents are in dispute and sought to be proven" (Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643 [1994]). "The rule protects against fraud, perjury, and inaccurate recollection by allowing the [factfinder] to judge a document by its own literal terms" (People v Haggerty, 23 NY3d 871, 876 [2014]). "Under a long-recognized exception to the best evidence rule, [*2]secondary evidence of the contents of an unproduced original may be admitted upon threshold factual findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence . . . and has not procured its loss or destruction in bad faith" (Schozer, 84 NY2d at 644). The proponent of the secondary evidence "has the heavy burden of establishing, preliminarily to the court's satisfaction, that it is a reliable and accurate portrayal of the original. Thus, as a threshold matter, the trial court must be satisfied that the proffered evidence is authentic and correctly reflects the contents of the original before ruling on its admissibility" (id. at 645 [internal quotation marks omitted]).
Courts have viewed the term "writings" expansively in "recognition of the fact that evidentiary rules concerning the admissibility of originals should be fashioned with a breadth sufficient to encompass modern techniques for storing and retrieving data" (id. [internal quotation marks omitted]). For instance, in Schozer, the Court of Appeals applied the best evidence rule to an unproduced original X ray film (see id. at 645-647).
A number of cases in New York have addressed whether the best evidence rule applies to testimony regarding the contents of destroyed or lost video surveillance footage. In People v Jimenez (8 Misc 3d 803, 805 [Sup Ct, Bronx County 2005]), the court found that the unavailability of the subject videotape was sufficiently explained, but held that the People failed to meet "their 'heavy burden' of establishing that the witness was able to recount or recite, from personal knowledge, substantially and with reasonable accuracy all of its contents." Inasmuch as the witness would not have been able to recount or recite "the innumerable details of the literally thousands of images that constitute videotape footage," the court found that "the witness' testimony would be no more than a summary of his interpretation of what he had seen on the tape and not a reliable and accurate portrayal of the original" (id.). Thus, the court concluded that the testimony was not admissible in the absence of the videotape (see id. at 806). In People v Cyrus (48 AD3d 159, 159 [1st Dept 2007], lv denied 10 NY3d 763 [2008]), the First Department stated that a police officer's testimony regarding a poor quality videotape depicting a theft at a Duane Reade store would "likely [be] inadmissible" because it would violate the best evidence rule. In Lawton v Palmer (126 AD3d 945, 946 [2d Dept 2015]), the Second Department held that the trial court did not improvidently exercise its discretion in precluding testimony about a surveillance tape and its contents pursuant to the best evidence rule or in finding that the defendants did not meet the " 'heavy burden' of establishing that the testimony was a reliable and accurate portrayal of the surveillance video" (cf. People v Wright, 160 AD3d 667, 669 [2d Dept 2018], lv denied 31 NY3d 1154 [2018], reconsideration denied 32 NY3d 1069 [2018]).
In this case, we initially conclude, consistent with the reasoning in the above-mentioned cases, that the testimony in question falls under the best evidence rule. However, we further conclude that, under the circumstances presented here, the People met their heavy burden of establishing that the testimony in question comes within the relevant exception to the best evidence rule and, thus, that the court did not err in admitting that testimony.
There is no dispute that the original, unaltered video surveillance footage of the incident would have been the best evidence for the jury to consider. However, the absence of the unpreserved footage was sufficiently explained by the People in their pretrial motion papers, and a proper foundation with respect to the loss of that footage was laid at trial through the APT leader's testimony. The store's customary practice was to delete video surveillance footage after 30 days, or less time for certain cameras, and only a portion of the footage was preserved by the APT leader (cf. United States v Bennett, 363 F3d 947, 954 [9th Cir 2004], cert denied 543 US 950 [2004]). The issue then becomes whether the APT leader was able to sufficiently recount the contents of the unpreserved footage with reasonable accuracy. At trial, the People laid a proper foundation establishing that he could do so. Specifically, the APT leader testified that he was a security professional whose duties included watching the store's surveillance footage on a regular basis. He testified as to the type of surveillance system utilized by the store and the different types of cameras within that system. He also testified, inter alia, as to his familiarity with the store and, in particular, the store's inventory of speakers. Lastly, the APT leader described by his testimony the events shown on the unpreserved footage with specificity and detail, and with enough accuracy that he was able to recognize defendant from viewing the footage. Under these circumstances, we conclude that, contrary to defendant's contention, the People met their burden of establishing that the APT leader's testimony regarding the unpreserved footage was a reliable and accurate portrayal of the contents of that footage (see generally Schozer, 84 NY2d at 645-[*3]646).
Defendant further contends that she was unduly prejudiced by the court's Molineux ruling. We reject that contention. Here, the court properly admitted evidence of certain alleged bad acts by defendant to demonstrate her identity (see generally People v Molineux, 168 NY 264, 293-294 [1901]; People v Igbinosun, 24 AD3d 1250, 1251 [4th Dept 2005]), and the probative value of that evidence was not outweighed by its prejudicial effect (see Igbinosun, 24 AD3d at 1251).
Defendant failed to preserve for our review her contention that the conviction is not supported by legally sufficient evidence (see People v Gray, 86 NY2d 10, 19 [1995]). In any event, viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that the evidence is legally sufficient to support the conviction (see People v McGlotten, 278 AD2d 936, 936 [4th Dept 2000], lv denied 96 NY2d 761 [2001]). Furthermore, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant's sentence is not unduly harsh or severe. We have considered defendant's remaining contention and conclude that it is without merit.
Entered: December 23, 2020
Mark W. Bennett
Clerk of the Court