COLE v. CANNO et al.

(Supreme Court, Appellate Division, Third Department. May 28, 1915.)

1. EVIDENCE ⬤⟹183—SECONDARY EVIDENCE—FOUNDATION—LOSS OF LETTER.
    Testimony by a witness that he had not seen a letter for more than two years and did not have it where he was then living, but that he left all his papers at his former residence when he moved, and did not know that the letter was not there, and had made no search for it, does not sufficiently show that the letter could not be produced, so as to render admissible secondary evidence of its contents.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 605–637; Dec. Dig. ⬤⟹183.]

2. PRINCIPAL AND AGENT ⬤⟹173—RATIFICATION—SUFFICIENCY OF EVIDENCE.
    In an action on a contract of employment for one year, evidence *held* not sufficient to show a ratification by defendants of such employment made by another on their behalf.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 659–661; Dec. Dig. ⬤⟹173.]

3. EVIDENCE ⬤⟹183—SECONDARY EVIDENCE—FOUNDATION.
    Before a party can give secondary evidence of the contents of a writing, he must show that he has in good faith exhausted to a reasonable degree all sources of information and means of discovery accessible to him.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 605–637; Dec. Dig. ⬤⟹183.]

    Kellogg and Howard, JJ., dissenting.

Appeal from Sullivan County Court.

Action by Claude Cole against Max Canno and another, copartners trading as Canno Bros. Judgment for the plaintiff, and defendants appeal. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Arthur C. Kyle, of Monticello (Ellsworth Baker, of Hurleyville, of counsel), for appellants.

John D. Lyons, of Monticello, for respondent.

LYON, J. [1] The complaint alleges that in the month of February, 1912, the defendants procured one Margolin to employ the plaintiff to make pot cheese from that date until December 1, 1912,

for which service it was agreed by the defendants, through their said agent, Margolin, that the plaintiff was to receive three cents per can for all milk made into cheese. To such allegation the defendants interposed a general denial. The right of the plaintiff to recover was dependent upon his employment by the defendants. A vital issue, therefore, was the authority of Margolin to bind the defendants by a contract with plaintiff for the performance of such service. In order to establish such authority the plaintiff called Margolin as a witness. To the question of plaintiff's attorney inquiring for whom the witness hired the plaintiff, the defendants interposed the objection that the question was improper and incompetent at this time; no authority having been shown as yet. The record subsequent to the objection is as follows:

"The Court: If they fail to show that they had any authority I will sustain the objection. Q. Who told you to hire him? A. Canno."

Cross-examination by defendants' attorney:

"Q. Did you have a talk with Canno about it? A. I did not go there— Q. About hiring Cole before you hired him? A. I had a letter from him. Q. That is the only communication you had from Canno before you hired him? A. Yes.

"Defendants' Attorney: I ask that the testimony be stricken out on the ground that the writing itself is the best evidence.

"The Court: I deny the motion. (Exception.)

"Q. Did you, while you were there, pay Claude Cole for some of the work that he did, and with whose money? A. With Canno's money.

"Defendants' Attorney: I renew my motion to strike out the testimony, in which he says that he received instructions from Canno, on the ground that it appears that those instructions that he received were in writing in the form of a letter, and the writing or letter itself is the best evidence.

"The Court: I will grant the motion, if they can show that that letter is still in existence."

Redirect examination by plaintiff's attorney:

"Q. What did you do with the letter? A. I did not save the letter. I had them a couple of years— Q. You haven't seen the letter since you received it? A. No, sir.

"The Court: Have you made any search for that letter for this court? A. No, sir."

Recross-examination by defendants' attorney:

"Were you requested by Mr. Lyons (plaintiff's attorney) to make any search for that letter? A. No, sir. Q. Any subpœna served on you? A. No, sir. Q. You haven't looked for it? A. No, sir. Q. You don't know whether it is over at your home; that you do not know? A. No; I know I haven't it. Q. Whether the letter is over there, you don't know anything about that? A. I know I haven't got that letter. Q. Do you know whether it is over there where you lived? A. I left all these papers in Beech Ridge. Q. You don't know whether it is there at Beech Ridge or not? A. No, sir. Q. You haven't been asked by Mr. Lyons or Mr. Cole about that letter since that time, until you have been put on the witness stand? A. No.

"Defendants' Counsel: I renew my motion.

"The Court: I will deny the motion. (Exception.)"

This testimony of Margolin, so far as it is claimed to establish the nonexistence of the letter, is most unsatisfactory. The period of two years during which he said he had them did not expire as to the letter until more than a year after the first trial, nor until about the time of the second trial. When Margolin testified, in answer to the question, "You don't know whether it is over at your home?" "No; I know I haven't got it," he evidently referred to his home at the time

of the trial, which appears to have been at Youngsville, because, when later questioned as to whether the letter was at Beech Ridge, he said he did not know. Although the evidence indicates that the defendant was operating the Beech Ridge creamery in the summer of 1914, there is nothing in the record indicating, or giving the right to infer, that when Margolin lived at Beech Ridge the creamery there was being operated by the defendants, or that the place in which he lived and where the letter was left was the creamery building, or that the letter, if still at the place where Margolin lived at Beech Ridge, is in the possession or under the control of the defendants, as has been suggested.

[2] It has been argued that the evidence establishes the ratification by defendants of the hiring of plaintiff by Margolin. The plaintiff testified that one of the defendants was at the Fulton creamery at various times prior to the 1st day of July, and at times talked with plaintiff and told him how he wanted the cheese made, and that the payment of plaintiff for services rendered was made by defendant by its check for his March, April, and May services. The latter two checks, which were offered in evidence by the plaintiff, were made by the defendant, Canno Dairy, payable to the order of A. P. Fulton, and bore the following indorsement:

"Pay to the order of C. Cole, employé of Canno Dairy Co.

"A. P. Fulton.<br>"C. Cole."

—indicating that as early as May 10th a misunderstanding existed as to whether Fulton or the defendants were the employers of the plaintiff. After July 1st, the defendants sent no cans in which to pack and ship the cheese, and hence the plaintiff ceased making cheese, and from that time until December 1st, a period of five months, the sole duty performed by the plaintiff for the defendants, and which represents approximately five-sixths of his claim, consisted in going daily to the Fulton creamery, pulling the plug from the defendants' vat, thus allowing the skimmed milk which Fulton had run into the vat the preceding day to run out, washing the vat, returning the plug, and going back home.

While it is claimed to be a question of fact under the evidence whether the defendants ratified the employment of plaintiff by Margolin, there is no evidence aside from the declaration of Margolin, that the hiring was for a period terminating December 1st, or that either of the defendants was at the Fulton creamery subsequent to July 1st, or at any time ratified the hiring with knowledge of the alleged length of the term. In fact, Margolin does not testify that the letter authorized him to hire the plaintiff for any length of time. The testimony of Margolin as to the contents of the letter was necessary in order to sustain plaintiff's alleged cause of action, and we think that such testimony, in the absence of proof as to the loss of the letter, was improperly admitted.

The defendants were entitled to insist that every reasonable effort for the discovery or production of the letter, without success, had been exhausted before parol evidence of its contents was admitted.

Margolin was an interested witness, to the extent, at least, of justifying his action in employing plaintiff, and avoiding liability to plaintiff for assuming the authority to employ plaintiff in case he did not have it; and the defendants were entitled to have the letter produced, if it could be done by a search through the witness' papers left at Beech Ridge. Secondary evidence as to the contents of the letter was only admissible when such was the best evidence attainable after reasonable effort to obtain the original had been exhausted. For aught that appeared, the letter was still at Margolin's former residence. It was there when last seen, and that was the place where search should naturally first be made for it. In the absence of all proof indicating its loss or destruction, and of the conditions under which it was left at Beech Ridge, which may have been of a character which insured its preservation, rather than its loss, it may still be presumed to be there.

[3] This was the second trial of the case, the first having been had in justice court in January, 1913, and presumably the plaintiff was aware, upon the trial in County Court in February, 1914, of the importance of the evidence claimed to be afforded by the letter.

"The general rule is that the party alleging the loss of a material paper, where such proof is necessary for the purpose of giving secondary evidence of its contents, must show that he has in good faith exhausted, to a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. Simpson v. Dall, 3 Wall. 460, 475 [18 L. Ed. 265]." Kearney v. Mayor of City of N. Y., 92 N. Y. 617, 621.

In the case of Dishaw v. Wadleigh, 15 App. Div. 205, 211, 44 N. Y. Supp. 207, the witness testified:

"I can't tell where the letter is; don't know where it is; don't think I could find it. I think it has been destroyed, but I am not sure. I have not been asked to produce those letters here. I have destroyed some of the letters, and some I have not."

The court, in its opinion reversing the judgment, said:

"This evidence does not show that any effort whatever was made to produce the letters, or ascertain that they could not be found. I think it was error to receive such evidence, and error not to have stricken it out upon the defendant's motion. Kearney v. Mayor, 92 N. Y. 617. The evidence gave color to the transaction in controversy, and was well calculated to influence the jury, and for such error the judgment and order must be reversed and a new trial granted."

It would certainly be establishing a dangerous precedent to permit a writing vital to the maintenance of a cause of action to be established by parol until some satisfactory proof of its loss or of inability to produce it had been made, or at least some effort to ascertain whether the writing were still in existence.

For the reasons stated, the judgment and order appealed from should be reversed, with costs to the appellants to abide the result. All concur, except KELLOGG, J., who dissents, in a memorandum in which HOWARD, J., concurs.

JOHN M. KELLOGG, J. (dissenting). Plaintiff was employed in February, 1912. The trial was in February, 1914. Margolin conceded-

ly was in the employ of the defendants, making cheese at the Fulton factory. He taught the plaintiff how to make cheese, and employed him as defendants' cheesemaker in his place. At the factory the skimmed milk was run into the defendants' vats, and plaintiff made cheese from it, which defendants marketed. The plaintiff acted as defendants' cheesemaker from February until July 1st, and was recognized by them as their employé. Each month they sent a check for the amount of his wages to the order of Fulton, and directed him to turn it over to the plaintiff, which he did. They directed him in their work.

A reversal of the judgment in favor of the plaintiff is urged upon the ground that it does not appear that Margolin had authority to employ the plaintiff. Margolin swears that the defendants wrote him authorizing the employment, that he had not seen the letter since he received it two years before, that he did not save it, that he was now living at Youngsville, that he knew he had not the letter, that it was not at his residence, and that when he left Beech Ridge he left all "these papers" there. He does not know whether the letter is there or not. It is improbable that papers left at his former residence two years before were in existence or were available for production. If we infer that at Beech Ridge he was in the employ of the defendants, and left there "the papers" relating to the employment, the letter, if in existence, is with the defendants, and not with the witness. I think the letter was sufficiently accounted for, and that it was competent for Margolin to swear that he was authorized to make the employment. If Margolin had not original authority, the defendants have ratified the employment. At least there is enough evidence of the employment prima facie to put the defendants to proof.

I favor an affirmance.