Weiss v Phillips (2017 NY Slip Op 08209)





Weiss v Phillips


2017 NY Slip Op 08209


Decided on November 21, 2017


Appellate Division, First Department


Renwick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 21, 2017
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta,P.J.
Dianne T. Renwick
Angela M. Mazzarelli
Judith J. Gische
Ellen Gesmer, JJ.


810090/10 3935 

[*1]Peter Weiss, Plaintiff-Respondent,
v
Edward Phillips, Defendant-Appellant, Austin Smith, et al., Defendants.



Defendant Edward Phillips appeals from the order of the Supreme Court, New York County (Gerald Lebovits, J.), entered November 4, 2016, which, among other things, granted plaintiff's motion for summary judgment on the first cause of action, to foreclose on an unsatisfied mortgage, and denied Phillips's cross motion for summary judgment dismissing the action.




Shaw & Binder, P.C., New York (Stuart F. Shaw and Daniel S. LoPresti of counsel), for appellant.
Dorf & Nelson LLP, Rye (Jonathan B. Nelson, Laura-Michelle Horgan and Jami L. Mevorah of counsel), and Cox Padmore Skolnik & Shakarchy LLP, New York (Solomon J. Borg of counsel), for respondent.



RENWICK, J.


In this case, plaintiff Peter Weiss seeks, among other things, a foreclosure and sale based [*2]on a Mortgage and Note Extension and Modification Agreement (CEMA)[FN1] executed by defendant Edward Phillips. Plaintiff lent $500,000 to borrowers who purported to own the real estate property they sought to mortgage [FN2]. The borrowers signed a note, in which they promised to pay the loan, and a mortgage, in which they gave the plaintiff/lender a security interest in the property they purported to own. The borrowers, however, acquired the property by fraudulent means. After the rightful owner, Phillips, reacquired the property, he executed the CEMA with the individual lender, Weiss. Pursuant to the CEMA, Phillips acknowledged Weiss's rights under the note and mortgage; and, Weiss agreed to forbear from foreclosing on the subject property for a year, presumably to permit Phillips to obtain refinancing.
We find that the motion court properly granted Weiss summary judgment. Unlike the dissent, under the circumstances of this case, we find that Weiss's interest in the property as a mortgagee was not rendered null and void because his borrowers, the mortgagors, had acquired the property by fraudulent means. In addition, we find that Weiss met his burden for summary judgment, on his claim for foreclosure and sale, by submitting the Mortgage and CEMA, along with undisputed evidence establishing both the existence of the note, which obviated the need to submit the note as proof that Weiss had the right to foreclose, and the nonpayment. Procedural and Factual History
In the 1990's, Phillips bought two distressed properties in Harlem (8 West 130th Street and 10 West 130th Street). On September 15, 1999, Phillips deeded 10 West 130th Street to a relative, Arque McCarthy, for no consideration. Phillips transferred the property to McCarthy so that McCarthy could obtain a mortgage for him to make repairs and pay accumulated debt. McCarthy held legal title with the understanding that Phillips would pay the loan and McCarthy would transfer the deed back to Phillips at a later date.
Four and one-half years later, in April 2004, Phillips's lawyer told him that he was sending his paralegal, Austin Smith, to obtain McCarthy's signature on a deed to transfer the property back to Phillips. Smith provided McCarthy with a blank deed.
Rather than filling in Phillips's name on the deed as the transferee, Smith inserted his mother's name (Jeanetta Welch-Ford) as the grantee for no consideration. Then, on December 8, 2005, 18 months after the fraudulent transfer, Welch-Ford unlawfully deeded the property to herself and Smith.
Also on or about December 8, 2005, Weiss lent $500,000 to Welch-Ford and Smith pursuant to their signing a note and mortgage in favor of Weiss, encumbering the property for the subject loan amount [FN3]. Welch-Ford and Smith breached the terms and conditions of the note by [*3]failing to make the required payments due on the note. Subsequently, when Phillips learned of the fraudulent transfer, he sued McCarthy to recover his property. Phillips later abandoned his lawsuit against McCarthy when she agreed to sue Welch-Ford and Smith to recover the property from them. Eventually, the lawsuit settled when Welch-Ford and Smith agreed to transfer title to the property back to Phillips. This deed transfer took place on February 23, 2009. At the time, the original McCarthy loan (made by McCarthy on behalf of and at the request of Phillips) reportedly remained unpaid; the principal and accumulated interest totaled $450,000.
Once Phillips learned of Weiss's intention to foreclose on Phillips's reclaimed property, Phillips executed the CEMA with Weiss, on April 8, 2009, extending and modifying the terms of Weiss's mortgage [FN4]. The CEMA stated that Smith and Welch-Ford were conveying the property to Phillips, and that Weiss agreed to extend and modify the terms of the note and mortgage that were executed by Smith and Welch-Ford. Paragraph 2(a) of the CEMA stated that Phillips consented to the conveyance of the property and understood that he was not personally assuming payment of the note executed by Smith and Welch-Ford. Paragraph 4 stated that Phillips warranted that the principal outstanding balance under the note was $500,000; that Smith and Welch-Ford had no deductions, counterclaims, defenses, or offsets to the note or mortgage; and that the note and mortgage remained in full force and effect and were fully enforceable in accord with their terms and the modification in the CEMA.
In paragraph 5, Phillips "ratifie[d] and reaffirm[ed]" that the terms and revisions of the [*4]note and mortgage remained in effect, and were true and correct, without modification, "except as necessary to implement" the CEMA. Paragraph 6 provided that Phillips warranted that the CEMA was a "valid, enforceable and binding obligation of [his]." In paragraph 7, Phillips "represent[ed] and warrant[ed] that there [we]re no deductions, counterclaims, defenses, or offsets of any nature whatsoever to any of [his] obligations under the Note or Mortgage, as ... modified [by the CEMA]."
Paragraph 15 stated that the note and mortgage as modified by the CEMA remained in full force and effect. Paragraph 16 provided that "[n]o extension, change, modification or amendment of any kind" of the CEMA, note, or mortgage would be effective unless it was in writing and signed by Weiss and Phillips. Paragraph 19 provided that all prior agreements between the parties with respect to the subject matter of the CEMA were merged into the CEMA.
Finally, Weiss agreed to forbear from foreclosing on the property for a year to permit Phillips to obtain refinancing. Specifically, paragraph 3 of the CEMA extended the due date for a year until April 1, 2010; it also capped the interest due at 9.6%, and required Phillips to make interest payments accruing each month in the amount of $4,000. Phillips paid $4,000 of accrued interest toward Weiss's mortgage on the first of each month for four consecutive months following the CEMA's execution, but he ceased doing so in September 2009.
Upon the expiration of the CEMA's extension period in April 2010, Weiss commenced this action against Phillips, Welch-Ford, and Smith. Subsequently, Weiss moved for summary judgment on the first cause of action of the complaint against Phillips. Along with his motions papers, Weiss provided a copy of the CEMA and the mortgage contract, but he did not provide a copy of the promissory note. Phillips both opposed the motion and cross- moved for summary judgment dismissing the complaint, arguing that the mortgage was unenforceable as it was based on a void deed. The motion court granted Weiss's motion for summary judgment on the first cause of action of the complaint for foreclosure on the mortgage and denied Phillips's cross motion for summary judgment dismissing the complaint. The motion court found that Weiss satisfied his prima facie burden of demonstrating his entitlement to judgment as a matter of law, and that Phillips offered insufficient evidence to raise a triable issue of fact. Discussion
As a threshold consideration, given Phillips's execution of the CEMA and other unique facts of this case, we reject the dissent's argument that the failure to produce the note prevents plaintiff from establishing a prima facie case for foreclosure.
The basis of a foreclosure is that an actionable breach of the mortgage has occurred entitling the plaintiff/mortgagee to sell the property to satisfy the debt the mortgage secured (see e.g. Fortress Credit Corp. v Hudson Yards, LLC, 78 AD3d 577 [1st Dept 2010]; Red Tulip, LLC v Neiva, 44 AD3d 204, 209 [1st Dept 2007], lv dismissed 10 NY3d 741 [2008]). The complaint must allege statements that will ultimately establish a judgment of foreclosure and sale (id.). Accordingly, a motion for summary judgment requires the plaintiff to prove the allegations of the complaint which, absent a viable defense or efficacious counterclaim, would entitle a plaintiff to the relief requested (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]).
In this case, the complaint seeks a foreclosure and sale based on the CEMA and the mortgage encumbering the subject property. As indicated, under the CEMA, as the "new owner," Phillips ratified and affirmed all the terms of the note and mortgage and warranted that there were no deductions, counterclaims, defenses, and/or setoffs to any obligations under the note. When the CEMA's extension period expired, without complete payment, Weiss commenced this action. Under these circumstances, Weiss established the allegations of the complaint by submitting the CEMA and the mortgage contract, along with unchallenged [*5]deposition testimony of the existence of the note and nonpayment.
Unlike the dissent, we do not view this action as a typical mortgage foreclosure action. In a typical mortgage foreclosure transaction, a prima facie case is based on production of the unpaid note and mortgage, which establishes that the plaintiff is entitled to foreclose on the unpaid note. A prima facie case is established here, however, by plaintiff's submission of the mortgage and the CEMA, in which Phillips acknowledges the existence and validity of the unpaid note and mortgage, as well as the deposition testimony in which the existence of the note is unchallenged (see Seaway Capital Corp. v 500 Sterling Realty Corp., 94 AD3d 856 [2d Dept 2012]).
We are not persuaded by the dissent's argument that UCC 3-804 mandates a different result. As fully explained below, the dissent takes UCC 3-804 out of context. UCC 3-804 allows one to maintain an action as a "holder" on a promissory note even though the instrument has been lost or destroyed. The section does not apply here where it is established that plaintiff has the right to sue on the note as the undisputed "holder" of the note.[FN5]
UCC article 3 defines "a holder in due course" as one who lawfully possesses a negotiable instrument (UCC 3-302). A holder in due course has the presumption that it is the proper party to enforce or negotiate the instrument (see UCC § 3-301, 3-302). Consistent with article 3, mortgage obligations are owed to the "[p]erson entitled to enforce the note" (see UCC § 3-301; see also Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361-362 [2015]; Bank of N.Y. v Silverberg, 86 AD3d 274, 279 [2d 2011]). The concept of entitlement to enforce the note is designed to protect the mortgagor against having to pay twice or defend against multiple claims on the note. If the mortgagor pays in full the person entitled to enforce the note, the note is discharged and the mortgage that secures it is extinguished (see FGB Realty Advisors, Inc. v Parisi, 265 AD2d 297 [2d Dept 1995]).
UCC 3-804 comes into play because article 3 of the UCC does not necessarily equate the person entitled to enforce the note with the person who owns the negotiable instrument (see UCC 3-3a). UCC 3-804 is intended to provide a method of recovery on instruments that are lost, destroyed or stolen. The plaintiff who claims to be the owner of such an instrument is not a holder as that term is defined under article 3, if the plaintiff is not in possession of the paper, and the plaintiff does not have the holder's prima facie right to recover under the section (see generally, 3 Anderson, Uniform Commercial Code, § 3-804 [3d ed. 1998]). Thus, under UCC 3-804, the plaintiff must establish the terms of the instrument and his ownership, and must account for its absence.
In this case, because of the CEMA, standing is not an issue [FN6]. The note's absence is [*6]accounted for by the CEMA and there is no legitimate question that Weiss is the party entitled to enforce under the note, as evinced by the mortgage contract and the CEMA, in which Phillips acknowledges Weiss's right under the note and mortgage, and the deposition testimony indicating the existence of the note. When he entered into the CEMA, Phillips was represented by counsel and he knew that Weiss remained the lawful holder of the note and mortgage. Indeed, Phillips waived lack of standing as a defense by failing to raise it in the answer, or by a pre-answer motion (CPLR 3211[e]; 3211[a][3]; see also Security Pac. Natl. Bank v Evans, 31 AD3d 278, 279-281 [1st Dept 2006], appeal dismissed 8 NY3d 837, 862 [2007]).
Our holding here is consistent with a prior holding from the Second Department in Seaway Capital Corp. v 500 Sterling Realty Corp. (94 AD3d 856). In Seaway, the foreclosure action contained the added element of a forbearance agreement (id. at 856). The Second Department found that the plaintiff established a prima facie case for foreclosure "by submitting proof of the existence of the mortgage and note made by and executed on behalf of [the defendant], certain forbearance agreements and [the defendant's] default." In such a situation, the submission of the forbearance agreement, like the CEMA here, served to establish the plaintiff's entitlement to foreclosure, along with proof of the note and mortgage, thus the failure to submit the note was not a fatal defect.
The dissent expresses unfounded concerns that our holding is inconsistent with the purpose of article 3 of the UCC, which, as indicated, dictates that only a holder in due course can sue on a note so that an obligor is not subject to double liability if the note later turns up in the possession of another claiming to be a holder in due course. Such a risk does not exist in this case where Phillips has assumed no personal liability for the note and the mortgage would be extinguished upon foreclosure.
The dissent seems to be operating under the misconception that Weiss can only enforce his rights under the subject note and mortgage if Phillips had assumed the mortgagors' (borrowers) personal obligations under the note. To be sure, a mortgage instrument is not independently enforceable as a debt (see FGB Realty Advisors v Parisi, 265 AD2d 297, 298 [2d Dept 1999] ["A mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation"]). This simply means that a mortgage may be enforced only by the person who is entitled to enforce the note's obligations that the mortgage secures (see Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361 [2015]).
Since Weiss's failure to submit the note, under the circumstances of this case, does not negate his entitlement to summary judgment of foreclosure, the burden shifted to Phillips to produce admissible proof sufficient to raise a triable issue of fact. In this case, as noted, the CEMA contains a provision whereby Phillips waived interposition of defenses or counterclaims in any foreclosure action. Courts have held that the waiver of the right to assert defenses, counterclaims or set offs is enforceable and thus not violative as against public policy (see e.g. Parasram v DeCambre, 247 AD2d 283 [1st Dept 1998]; KeyBank N.A. v Chapman Steamer Collective, LLC, 117 AD3d 991 [2d Dept 2014]). Similarly, where the agreement of the parties, like the CEMA here, clearly recites that the indebtedness must be paid without set offs, deduction, defense or counterclaim, such claims are barred (see Federal Land Bank of Springfield v Saunders, 108 AD2d 838, 839 [2d Dept 1985], lv denied 64 NY2d 611 [1985]). Accordingly, waived defenses "may not be maintained" (Bank of New York v Cariello, 69 AD2d 805, 805 [2d Dept 1979]).
Phillips, however, argues that the mortgage is not enforceable because it was based on a [*7]"fraudulent/forged deed." We reject this argument. Essentially, Phillips asserts that because McCarthy and Smith never had title in the first place, they never had anything to mortgage. Thus, the mortgage was invalid. Phillips's argument, however, conflates the distinction between a void deed and a voidable deed.
To be clear, a deed may be cancelled because it is void or because it is voidable. The difference, however, between a void deed and a voidable deed is important under the law because it affects a party's ability to defend against a future purchaser or encumbrancer for value. A void real estate transaction is one where the law deems that no transfer actually occurred (Faison v Lewis, 25 NY3d 220, 225 [2015]). Accordingly, if the deed is void, it does not pass title and cannot be enforced even if title is later acquired by a bona fide purchaser (id.; ABN AMRO Mtge. Group, Inc. v Stephens, 91 AD3d 801, 803 [2d Dept 2012]). Similarly, a lender who takes a mortgage to a property subject to a void deed does not have anything to mortgage, so the lender's mortgage is invalid as well (Cruz v Cruz, 37 AD3d 754 [2d Dept 2007]; Yin Wu v Wu, 288 AD2d 104, 105 [1st Dept 2001]). In contrast, a voidable real estate transaction is one where a transfer is deemed to have occurred, but can be revoked. In that situation the deed is only voidable (Faison v Lewis, 25 NY3d at 225).
The question becomes whether the deed by which Welch-Ford and Smith acquired the subject real estate was a void deed or a voidable deed. Forged deeds and/or encumbrances are those executed under false pretenses, and are void ab initio (see Marden v Dorthy, 160 NY 39 [1899]; GMAC Mtge. Corp. v Chan, 56 AD3d 521, 522 [2d Dept 2008]; Cruz v Cruz, 37 AD3d 754). The interests of subsequent bona fide purchasers or encumbrancers for value are thus not protected under Real Property Law § 266 [FN7] when their title is derived from a forged deed or one that is the product of false pretenses (see Ameriquest Mtge. Co. v Gaffney, 41 AD3d 750 [2d Dept 2007]; LaSalle Bank Natl. Assn. v Ally, 39 AD3d 597, 599-600 [2d Dept 2007]). In contrast, a fraudulently induced deed is merely voidable, not void (see Marden v Dorthy, 160 NY at 150; Dalessio v Kressler, 6 AD3d 57, 61 [2d Dept 2004]; Yin Wu v Wu, 288 AD2d at 105).
In this case, Phillips improperly labels the instrument by which the improper transfer took place as both a "fraudulent/forged deed." The undisputed facts establish, however, that the deed was the result of fraudulent inducement, rather than the result of a forged deed or one executed under false pretenses. As fully explained above, the tortfeasor (at the time, a paralegal assigned to procure the deed transfer) obtained the owner's signature on the deed purportedly to transfer the property back to its original owner, Phillips. The paralegal presented the owner with a blank deed, which she signed. The subsequent deed transfer was the result of a classic fraudulent inducement, because the owner believed that she was signing the deed in order to transfer the property back to its original owner, Phillips. Instead, the deed transferred the property to the paralegal's mother and then himself, before they obtained a loan and mortgage from Weiss. Thus, the deed here was voidable, not void ab initio.
Phillips, however, argues that Weiss was not a bona fide encumbrancer entitled to protection under Real Property Law § 266. While the evidence in this case presents an issue of fact as to whether Phillips was in actual possession of the property when Weiss acquired his mortgage interest, which was sufficient to require an inquiry by Weiss into "the existence of any right which [the owner may be] able to establish" (Phelan v Brady, 119 NY 587, 592 [1890]), [*8]Phillips's attack on the mortgage faces an insurmountable obstacle, the CEMA. The CEMA makes clear that Phillips acknowledged Weiss's rights under the note and mortgage and waived any claims or defenses as to the same.
We reject Phillips's contention - adopted by the dissent here - that the CEMA is ambiguous as to its intended purpose.[FN8] Phillips argues that ambiguity is created by the language in the CEMA stating that Phillips "is not personally assuming payment of the Note." However, this simply means that if Weiss proceeded to an eventual foreclosure and sale of the property and the proceeds of the sale were less than the amount due and owing to Weiss under the note and mortgage, Phillips would not be personally liable to pay the deficient amount. Contrary to the dissent's position, this language is not inconsistent with the remaining terms of the CEMA which, in effect, indicated to Phillips that his property was subject to Weiss's lien up to the amount of the unpaid note.
Ultimately, Phillips may not avoid a mortgage obligation on his property on the ground of fraud where, after acquiring knowledge of the fraud, he affirmed in the CEMA that his property was subject to Weiss's lien up to the amount of the unpaid note. A party can ratify a contract by failing to timely disaffirm it or by acts, like here, that are consistent with a showing of an intent to be bound by the contract, even if the contract was otherwise voidable (see Stauss v Title & Guar. Trust Co., 284 NY 41, 45 [1940]; Cooper v Greenberg, 151 AD2d 423, 424 [1st Dept 1989]).
In this case, not only did Phillips sign the CEMA, by which he acknowledged Weiss's rights under the Note and Mortgage, but he also paid $4,000 of accrued interest toward Weiss's mortgage on the first of each month, for four consecutive months, pursuant to the CEMA's extension agreement. Accordingly, because of the unequivocal language of the CEMA, and in light of Phillips's conduct following its execution, Phillips expressly and impliedly ratified Weiss's mortgage on the property (see Votta v Votta Enter., 249 AD2d 536, 537 [2d Dept 1998] [mortgage debt deemed ratified where borrowers made payments for 18 months after discovering the alleged fraud]).
Significantly, Phillips signed the CEMA while represented by counsel. It is of no moment that Phillips now claims to have misunderstood the legal implications and ramifications of the terms of the CEMA. The fact that no one allegedly explained the agreement to the signer does not make the agreement unenforceable unless it rises to the level of fraud, overreaching or unconscionability (Matter of Gould v Board of Educ. Of Sewankaha Cent. High School Dist., 81 NY2d 446, 453 [1993]). The concept of unconscionability permits a court to declare a part or all of a contract inoperative if it would result in "unfair surprise" or if it would be "oppressive" to [*9]the signer (id.; see also Broadway-111th St. Assoc. v Morris, 160 AD2d 182 [1st Dept 1990]).
There is no showing of unconscionability in the formation of the CEMA, the subject contract (see Morris v Snappy Car Rental, 84 NY2d 21, 30 [1994]). Phillips's allegation that his lawyer improperly induced him to sign the CEMA is refuted by his counsel's detailed explanation for entering into the CEMA. In his deposition, counsel for Phillips explained that $450,000 of the $500,000 proceeds of Weiss's loan went to satisfy the first mortgage, which McCarthy had obtained on Phillips's behalf. The mortgage, for which McCarthy was liable, was in default even though Phillips had agreed to make payments on the loan. The $500,000 second mortgage loan covered the debt of the first mortgage loan taken out by McCarthy on behalf of Phillips. Under the circumstances, counsel for Phillips reasonably concluded that Weiss, as a mortgagee, had a valid equitable subrogation claim for $450,000 (see King v Pelkofski, 20 NY2d 326 [1967] [A party who provides the money used to discharge a prior mortgage is entitled to be subrogated to the rights of the prior lienor where the party's lien, through some disability, becomes invalid]). Finally, counsel for Phillips explained that, prior to entering into the CEMA, Phillips had already agreed to waive seeking the remaining $50,000 from the parties who defrauded him, in exchange for regaining title to the property.
Phillips alternatively claims that the CEMA is unenforceable because there was no consideration. This ignores the fact that by entering into the CEMA, Weiss agreed to forbear from foreclosing on the property for a year to permit Phillips to obtain refinancing. Finally, we have considered Phillips's remaining contentions, including that Weiss violated the rule against successive summary judgment motions, and find them unavailing.
Accordingly, the order of the Supreme Court, New York County (Gerald Lebovits, J.), entered November 4, 2016, which, among other things, granted Weiss's motion for summary judgment on the first cause of action, to foreclose on an unsatisfied mortgage, and denied Phillips's cross motion for summary judgment dismissing the action, should be affirmed, without costs.
All concur except Gesmer, J. who
dissents in part in an Opinion.




GESMER, J. (dissenting in part)


I respectfully dissent as to the portion of the majority decision that affirms the grant of summary judgment to plaintiff Peter Weiss. The majority's position is premised on the accuracy of two statements in the first paragraph of its writing, both of which are unsupported by any evidence. First, my colleagues state that plaintiff loaned $500,000 to the borrowers. However, plaintiff does not swear in any of his affidavits that he loaned $500,000 to anyone, and the record before the court does not include any documents showing that he did so.
Second, the majority states that the alleged borrowers signed a note. However, the record before the court does not include any note, or any affidavit by anyone who claims to have drafted or signed the alleged note, or even by anyone who claims to have seen or ever possessed the alleged note. In fact, plaintiff's failure to produce the note on which he sues deprives him of a fundamental element of his prima facie case for foreclosure (Bank of Smithtown v 264 West 124 LLC, 105 AD3d 468, 469 [1st Dept 2013]). Plaintiff can only cure this deficiency by explaining the absence of the note and proving its terms, which he has failed to do (UCC 3-804; see also Shanmugam v SCI Eng'g, P.C., 122 AD3d 437, 438 [1st Dept 2014]; Clovine Assoc. Ltd. Partnership v Kindlund, 211 AD2d 572, 573 [1st Dept 1995]). The record does not include any explanation for the absence of the note. One possible conclusion is that the note does not exist. This undercuts the majority's conclusion that plaintiff is the "undisputed holder' of the note." Thus, in the absence of an explanation for its absence, production of the note, and proof that [*10]plaintiff holds it, is essential to plaintiff's case. The majority makes the unprecedented holding today that plaintiff may make out a prima facie case for foreclosure without either producing the note or explaining its absence and proving its terms.
The majority writing is also premised on a significant error of law. A foreclosure proceeding is premised on the breach of a note, not, as the majority states, a breach of a mortgage, since "a mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation" (FGB Realty Advisors v Parisi, 265 AD2d 297, 298 [2d Dept 1999], citing Copp v Sands Point Mar., 17 NY2d 291, 293 [1966]).
Defendant Edward Phillips has raised triable issues of fact as to plaintiff's entitlement to a judgment of foreclosure, including whether Phillips had any obligation to pay plaintiff on which he could have defaulted, and whether plaintiff is the holder of a bona fide obligation. Therefore, I would reverse the grant of summary judgment to plaintiff, and affirm the denial of summary judgment to Phillips.
Facts
Plaintiff, a college graduate, is in the business of lending money secured by mortgages. He works both in his own name and through his business, Confidential Lending LLC. Phillips had no formal education after the age of 14, when he quit school to work on his family's farm in Tobago. He now supports himself doing plumbing repairs on a freelance basis for a management company.
On May 15, 1996, Phillips purchased a three family dwelling at 10 West 130th Street in Manhattan (the Property). In 1999, on the advice of his lawyer Edwin Drakes, he made an oral agreement with his relative Arque McCarthy that he would deed the Property to her, for no consideration, and that she would, upon his request, deed the Property back to him, at a future date. Accordingly, on September 15, 1999, he executed a deed transferring ownership of the Property to McCarthy.[FN1]
In or about April 2004, Drakes told Phillips that it was time to have McCarthy deed the Property back to him. Drakes said that he would take care of the transfer, by sending his employee Austin Smith to obtain McCarthy's signature on a deed that would transfer the Property back to Phillips [FN2]. Phillips told McCarthy that she should meet with Smith to sign the [*11]deed. According to McCarthy's undisputed affidavit, on or about April 28, 2004, Smith presented her with a blank deed, which she signed; no notary was present when she did so. She believed that she was signing the deed in order to transfer the Property back to Phillips.
On August 2, 2004, a deed dated April 28, 2004 transferring the Property from McCarthy to Smith's mother, Jeanetta Welch-Ford, was recorded [FN3]. An acknowledgment of McCarthy's signature by notary Lewis Phillip appears on the deed. McCarthy did not authorize the transfer of the Property to Welch-Ford, and did not see the completed deed until years later. The accompanying Real Property Transfer Report submitted to the City Register provides that this was a "Sale Between Relatives or Former Relatives." There is no claim that Welch-Ford and McCarthy are relatives or former relatives. The accompanying smoke detector affidavit submitted to the City Register confirms that the Property is residential.
On November 12, 2004, Phillips commenced an action against McCarthy under New York County index number 116025/04 in which he filed a lis pendens against the Property and claimed that McCarthy was going to transfer or had transferred the Property to a third party in violation of their agreement. He sought an order directing her to transfer title of the Property back to him. By order dated August 26, 2005, the court denied a motion to vacate the lis pendens. According to the Unified Court System website, the matter was dismissed on August 30, 2005.[FN4]
On or about December 8, 2005, Welch-Ford executed a deed transferring the Property from herself to herself and Smith. Simultaneously, Smith and Welch-Ford entered into a Mortgage, Security Agreement and Assignment of Leases and Rents (the Mortgage) with plaintiff, ostensibly to secure a loan from plaintiff of $500,000. Plaintiff had done three or four mortgage transactions with Smith before that.
The Mortgage refers to a note dated December 8, 2005 (the Note) but the Note is not in the record on appeal and there is no indication that it was provided to the motion court [FN5]. Plaintiff has failed to meet his burden to provide an explanation as to why the Note was not produced. Therefore, the court cannot consider testimony as to its contents (Jerome Prince, Richardson on Evidence § 10-201 [Farrell 11th ed 1995]; Martin, Capra and Rossi, New York Evidence [*12]Handbook § 10.3 [3d ed 2017]; 57 NY Jur 2d, Evidence and Witnesses § 253). Indeed the record is also devoid of evidence that Weiss paid $500,000 to Smith and Welch-Ford at that time, either by direct payment or by making a payment on their behalf. Weiss does not make any affirmative statement that he made such a payment, nor is there any documentary evidence that he made such a payment.
The recording and endorsement cover page for the Mortgage states that the Property is a "DWELLING ONLY - 3 FAMILY."[FN6] However, the Mortgage provides, at Paragraph 45, titled "Non-Residential Property," that it "does not cover real property principally improved by one or more structures containing in the aggregate six (6) or less residential dwelling units having their own separate cooking facilities." At the end of the mortgage document, there are three boxes in which the borrower is to indicate whether the property securing the loan is residential, and has one or two units, or more; no box is checked.
A December 2005 title report, prepared in connection with the Mortgage, lists Phillips's lis pendens, as well as a lis pendens filed against McCarthy in connection with foreclosure actions against her by Nationscredit Financial Services. Phillips first saw this title report when it was produced in discovery in this action. Plaintiff testified that, although he received the title report prior to the closing, he did not examine the schedules attached to it. Plaintiff further testified that, before making the loan, he never spoke to Welch-Ford, did not request that Smith and Welch-Ford complete a loan application, did not conduct a credit check on them, did not run an internet search on the Property, and did not have the Property appraised prior to closing. He testified that he only looked at the Property from the outside.
On January 31, 2006, the deed transferring the Property from Welch-Ford to Welch-Ford and Smith was recorded, along with the Mortgage.
On January 5, 2007, McCarthy, represented by attorney David K. Fiveson,[FN7] commenced an action against Smith and Welch-Ford under New York County index number 100179/07 (the McCarthy action)[FN8] seeking to set aside the deeds transferring the Property from McCarthy to Welch-Ford and from Welch-Ford to herself and Smith, and seeking damages of $500,000, "minus any sums used from these proceeds to discharge valid liens of plaintiff against [the Property]." According to the Unified Court System website, the McCarthy action was marked "settled during trial" on February 4, 2009. The record does not contain either a written settlement agreement or a transcript of an agreement entered into in open court, and no one has [*13]explained its absence. Therefore, the terms of the alleged agreement have not been established, except that, on or about February 23, 2009, Smith and Welch-Ford executed a "correction deed," transferring the Property to Phillips, which states that it "is intended to correct the name of the grantee's in the deed recorded 1/31/2006 under CRFN 2006000059194 from Jeanettea [sic] Welch Ford and Austin Smith -to- edward [sic] Phillips pursuant to a settlement of New York County Supreme Court action/index no. 10017/2007 [sic]." The correction deed was recorded on May 29, 2009.
In April 2009, Phillips and plaintiff executed a document titled "Mortgage and Note Extension and Modification Agreement" (EMA)[FN9]. The EMA denominates Smith and Welch-Ford as "Original Borrower," Phillips as "New Owner," and plaintiff as "Lender." The EMA provides that plaintiff consents to the conveyance of the Property from Smith and Welch-Ford to Phillips, and provides, at paragraph 2(a), that "[i]t is understood and acknowledged that New Owner is not personally assuming payment of the Note." It extends the maturity date of the Note to April 1, 2010. However, the EMA does not set forth the terms of the Note.
Moreover, contrary to the majority's statement that the EMA obligates Phillips to make interest payments to plaintiff, the EMA is explicit that Phillips is not assuming payments due under the alleged Note. The EMA is, at best, ambiguous as to who is obligated to make interest payments, as the motion court previously found in its October 10, 2012 order denying plaintiff's first motion for summary judgment. This ambiguity had not been resolved, and remained the law of this case at the time the motion court granted plaintiff's second motion for summary judgment, which is the subject of this appeal. The second paragraph 3 of the EMA, at the bottom of page 1, provides that
"[i]nterest shall continue to accrue on the outstanding principal balance due under the Note from March 1, 2009 until the Maturity Date at the rate of 9.6% per annum. Interest only shall be payable in the amount of $4,000 on April 1, 2009 and like amount on the first day of each month thereafter. All accrued interest shall be due and payable on the Maturity Date or such earlier date as the principal sum due under the Note shall become due and payable. Borrower may prepay the principal balance and all accrued interest at any time without premium or penalty."
The EMA further states that accrued interest under the Note totaled $81,666.66 as of February 28, 2009; that the outstanding principal balance was $500,000; and that "Borrower has no deduction, counterclaim, defense and/or offset relating to the Note or Mortgage, which Note and Mortgage are acknowledged to be and remain in full force and effect and fully enforceable in accordance with their respective terms . . . . " It further provides that "New Owner represents and warrants that there are no deductions, counterclaims, defenses, or offsets of any nature whatsoever to any of its obligations under the Note or Mortgage . . . . " However, it does not state that New Owner has any obligations under the Note, Mortgage, or EMA, and it does not define the term "Borrower."
Phillips testified throughout his deposition that he had difficulty understanding written documents, legal concepts, or words such as "indemnify," "convey," or "legitimate."[FN10] He testified that he understood the EMA to obligate "the person who took . . . the [M]ortgage to pay" it. In his affidavit submitted to the motion court, he also stated that he understood the EMA to be a forbearance agreement that did not give plaintiff the right to foreclose against him.
Plaintiff testified that he understood the second paragraph three in the EMA to obligate Phillips to make interest payments of $4,000 per month, although that paragraph does not impose any obligation on Phillips either by name or as "New Owner." Although the EMA defines Smith and Welch-Ford as "Original Borrower," the term "Borrower" is not defined. Plaintiff testified that he understood the term "Borrower" to refer to Phillips, although he acknowledged that plaintiff never received any funds from the Mortgage proceeds. Although plaintiff has a college education and is an experienced businessman whose business is making loans secured by mortgages, he claimed not to understand the language in paragraph 2(a) of the EMA providing that Phillips is not personally liable on the Mortgage.
Plaintiff commenced this foreclosure action on November 19, 2010. Smith and Welch-Ford did not appear or submit an answer.
In the amended complaint dated March 4, 2011,[FN11] plaintiff alleges in his first cause of action that Smith and Welch-Ford failed to make payments due under the Mortgage and Note on February 1, 2008 and thereafter; that Phillips was obligated to pay $4,000 per month commencing April 1, 2009 pursuant to the EMA; and that he failed to do so on and after September 1, 2009. Plaintiff seeks a judgment of foreclosure.
The amended complaint further alleges, in the second cause of action, that plaintiff is entitled to a judgment against "Defendant" for the costs of collection because Smith and Welch-Ford agreed to pay collection costs and counsel fees. In addition, in the third cause of action, plaintiff alleges that Smith and Welch-Ford are liable for sums due under the Mortgage and Note pursuant to a written guaranty, and plaintiff seeks a judgment against them for any deficiency remaining after sale of the Property. The fourth cause of action alleges that McCarthy took out a mortgage on the Property in 1999 for $208,000, that McCarthy and Phillips failed to make payments on that mortgage, and that $350,000 of the proceeds of the Mortgage were used to pay off the 1999 mortgage. Plaintiff seeks, in the alternative to a judgment on his first three causes of action, a declaratory judgment that he has a valid first lien on the Property, to the extent that $350,000 of the proceeds from the Mortgage were used to pay off the earlier mortgage on the Property or were "paid to or for the benefit of" Phillips.[FN12]
Phillips filed a verified amended answer on April 7, 2011. Phillips's affirmative defenses include that the Mortgage is unenforceable because it is based on a deed obtained through false pretenses; that plaintiff is not a bona fide encumbrancer for value because he should have known that the deed was questionable, and failed to make reasonable inquiry; that the EMA is unenforceable because it is based on a deed obtained through false pretenses, and lacks consideration; and that the EMA does not obligate Phillips to pay any sums.
By order dated October 10, 2012, Judge Wooten denied both plaintiff's first motion for summary judgment, which sought dismissal of Phillips's defenses to his obligations under the Mortgage, and Phillips's cross motion for summary judgment, in which he sought dismissal on the grounds that plaintiff had failed to attach a copy of the Mortgage and Note. In addition, Judge Wooten held that the EMA was ambiguous, and that plaintiff's and Phillips's materially divergent claims about their intent in entering into the EMA precluded summary judgment as a matter of law.
After further discovery, including party depositions, plaintiff moved for summary judgment on his first cause of action for a judgment of foreclosure, and Phillips cross-moved for summary judgment dismissing the complaint as against him. By order dated July 22, 2016, which is the subject of this appeal, Judge Lebovits granted plaintiff's motion for summary judgment on his first cause of action, denied Phillips's cross-motion for summary judgment, and directed plaintiff to settle an order on notice referring the matter to a Special Referee.
Analysis
I would vote to reverse the award of summary judgment to plaintiff for three reasons.
First, plaintiff has failed to make out a prima facie case entitling him to a judgment of foreclosure, since he has failed to produce the Note (Bank of Am., N.A. v Thomas, 138 AD3d 523 [1st Dept 2016]; see also Bank of Smithtown, 105 AD3d at 469; Bank of N.Y. Trust Co., N.A. v Chiejina, 142 AD3d 570 [2d Dept 2016][all holding that plaintiff establishes a prima facie right to foreclosure by producing the mortgage, note and undisputed evidence of nonpayment])[FN13]. Indeed, neither plaintiff's affidavit in support of the motion for summary judgment, nor his attorney's accompanying affirmation, even refer to the Note, even though plaintiff's failure to present it to the motion court was a major factor in the denial of plaintiff's first summary [*14]judgment motion.
The majority's statement that plaintiff satisfied his obligation by producing unspecified "evidence . . . of the note" is not consistent with the case law. A party may only prevail in a foreclosure action without producing the underlying note where he meets his "burden of explaining the note's loss, ownership and terms as required by UCC 3-804" (Clovine Assoc. Ltd. Partnership v Kindlund, 211 AD2d at 573; see also Shanmugam v SCI Eng'g, P.C., 122 AD3d 437, 438 [1st Dept 2014]; Marrazzo v Piccolo, 163 AD2d 369 [2d Dept 1990]). Absent evidence of the complete terms of the Note, plaintiff has failed to establish his prima facie case (76-82 St. Marks, LLC v Gluck, 147 AD3d 1011 [2d Dept 2017]; Wong v Wong, 86 AD3d 439 [1st Dept 2011]; Cole v Canno, 168 App Div 178, 183 [3d Dept 1915]["It would certainly be establishing a dangerous precedent to permit a writing vital to the maintenance of a cause of action to be established by parol until some satisfactory proof of its loss or of inability to produce it had been made, or at least some effort to ascertain whether the writing were still in existence"]).
This is consistent with the purpose of UCC 3-804, which protects the obligor by requiring the plaintiff to prove it is a holder in due course of the note sued upon, so that the obligor is not subject to double liability if the note later turns up in the possession of another claiming to be the holder in due course (see Official Commentary, McKinney's Cons Laws of NY, Book 62½, UCC 3-804)[FN14]. Here, plaintiff has offered no explanation whatsoever for the Note's absence, and no proof of its contents. Furthermore, the majority may not rely on the EMA to take the place of the missing Note, because that document does not set forth the terms of the alleged Note.
Moreover, plaintiff has also failed to present "undisputed evidence" that Phillips has defaulted since, as discussed further below, the EMA is ambiguous as to whether it obligates Phillips to make any payments on the Note (Red Tulip, LLC v Neiva, 44 AD3d 204, 209 [1st Dept 2007], lv dismissed 10 NY3d 741 [2008]). The majority appears to view Phillips's execution of the EMA as a ratification of the Mortgage and alleged Note. However, the EMA merely states at paragraph 7 that Phillips acknowledges that there are no defenses or counterclaims to his obligations under the Note or Mortgage. Since there is no claim that he had obligations under either, this statement does not impose any obligation on him, or constitute a ratification of either document. Nor has plaintiff presented evidence that the original borrowers defaulted, since he has not proven what obligations, if any, the Note imposed on them.
Second, defendant has raised material questions of fact as to the EMA's enforceability. At the time that Weiss made his second motion for summary judgment resulting in the order now appealed from, it remained the law of this case that the EMA is ambiguous, and neither party has produced evidence in admissible form sufficient to resolve the ambiguity.
The motion court seemed to hold that the ambiguity of the EMA was resolved by the settlement agreement in the McCarthy action against Smith and Welch-Ford, which plaintiff claims was binding on Phillips and required him to indemnify Smith and Welch-Ford against any deficiency judgment in connection with the Mortgage.
However, no one has produced that settlement agreement. To succeed on a summary judgment motion, the movant must establish his cause of action by presentation of proof in [*15]admissible form (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Advanced Global Tech., LLC v Sirius Satellite Radio, Inc., 44 AD3d 317, 318 [1st Dept 2007]). The best evidence of the terms of the alleged settlement agreement would be a certified copy of the complete transcript of the proceedings, or a signed writing; neither party presented any such evidence to the motion court (see Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 644 [1994]). Instead, plaintiff presented an unsigned transcript of Phillips's deposition testimony, which included purported quotes of portions of the transcript of the alleged settlement agreement. This is clearly inadequate under the best evidence rule to establish the contents of the settlement agreement.
In addition, since Phillips was not a party to the McCarthy action, it is unlikely that any settlement of that action would bind him. CPLR 2104, which deals with agreements "between parties or their attorneys relating to any matter in an action," requires that such agreements be reduced to a writing, unless they are made "between counsel in open court" (CPLR 2104). Since Phillips was not a party to the McCarthy action, the exception created by CPLR 2104 does not apply here. Furthermore, since the agreement is alleged to have addressed interests in real property and an obligation to pay for the debt of another, an oral agreement would also violate the statute of frauds (General Obligations Law § 5-701[a][2], [10]; see also Matter of Dolgin Eldert Corp., 31 NY2d 1, 11 [1972]).
Moreover, as Judge Wooten previously found, the plain language of the EMA does not obligate Phillips or "New Owner" to do anything, and expressly provides that he is not personally liable on the Note. The deposition testimony attached to the motion does not resolve the ambiguity; indeed, it demonstrates that Phillips and Weiss had directly contrary purposes and understandings in entering into the EMA. Phillips testified that he believed, when he signed the EMA, that Fiveson, whom Phillips perceived to be representing him at the time, had prepared it and that it was "a part of the deed" transferring the Property back to him. He further testified that Fiveson did not fully explain it to him, and, contrary to the majority's statement, it is not clear on the record before us that Fiveson, or any other attorney, represented Phillips when he executed the EMA [FN15]. Fiveson and Borg testified that Borg prepared it. Fiveson testified that he understood the EMA to be a forbearance agreement, not a loan to Phillips secured by the Property.
Finally, contrary to the majority's statement, Phillips has also raised questions of fact as to whether plaintiff is a bona fide encumbrancer entitled to protection under Real Property Law § 266. I agree with the majority that a deed that is the result of fraudulent inducement is voidable (Faison v Lewis, 25 NY3d 220, 225 [2015]). However, the majority fails to address the relevance to this case of the doctrine that, where a mortgagee had previous notice of fraud affecting the grantor's title, it may not be a bona fide encumbrancer, and may not be protected (RPL § 266; see also Yin Wu v Wu, 288 AD2d 104, 105 [1st Dept 2001]). "A mortgagee will be charged with constructive notice if it is aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue.' If a reasonable [*16]inquiry' would reveal some evidence of fraud, then failure to make some investigation' will divest the mortgagee of bona fide encumbrancer status" (Miller-Francis v Smith-Jackson, 113 AD3d 28, 34 [1st Dept 2013] [internal citations omitted]).
Here, Phillips has raised questions of fact requiring a trial as to whether plaintiff is a bona fide encumbrancer entitled to protection [FN16]. First, the Mortgage itself raises an issue as to whether plaintiff conducted a reasonable inquiry, since the cover pages state that the Property is residential, and the Mortgage itself states that it is not; moreover, public records and a cursory perusal of the outside of the Property would have revealed that it is a residential building. Second, plaintiff admitted that he received a title report in connection with the Mortgage prior to the closing, but did not read it completely. That title report showed that Phillips had obtained a lis pendens on the property in his 2004 action against McCarthy. Similarly, plaintiff knew that, at the time of the closing on the Mortgage, another mortgage existed in McCarthy's name, even though Smith and Welch-Ford claimed to own the Property. Finally, plaintiff admitted at his deposition that he conducted virtually no investigation into Smith's and Welch-Ford's creditworthiness and bona fides and into the Property and its history and value, other than viewing the outside of the building and walking around the neighborhood; and Phillips testified that plaintiff later admitted to him that he had not even done that.
Since plaintiff has failed to make out a prima facie case entitling him to a judgment of foreclosure, and Phillips has raised issues of fact requiring a trial, I would vote to reverse the motion court's award of summary judgment to plaintiff on his first cause of action, and I would affirm the motion court's denial of Phillip's motion for summary judgment.
Order, Supreme Court, New York County (Gerald Lebovits, J.), entered November 4, 2016, affirmed, without costs.
Opinion by Renwick, J. All concur except Gesmer, J. who dissents in part in an Opinion.
Acosta, P.J., Renwick, Mazzarelli, Gische, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: NOVEMBER 21, 2017
CLERK



Footnotes

Footnote 1: The "CEMA" is titled the "Mortgage and Note Extension and Modification Agreement" but the parties and the court referred to it as the "Consolidated Extension Mortgage Agreement Note (CEMA)."

Footnote 2: Austin Smith and Jeanetta Welch-Ford are fraudulent owners/borrowers who are also defendants in this action. They, however, are not involved in this appeal. This appeal concerns only Supreme Court's order granting Weiss's motion for summary judgment against defendant and denying Phillips's summary judgment motion dismissing Weiss's claims asserted against him.

Footnote 3: The dissent claims that it is disputed whether Weiss loaned $500,000 to anyone. However, in his deposition, Phillips does not allege that Welch-Ford and Smith never executed a mortgage and note for $500,000, in favor of Weiss. To the contrary, Phillips simply alleged that it was "unconscionable" and "unfair" for Weiss to demand the $500,000. "Peter Weiss didn't give me $500,000. He gave it to Austin Smith and Jeanettea [sic] Welch-Ford." In addition, in his amended answer, which he verified, Phillips explicitly acknowledges that Welch-Ford and Smith had defaulted by failing to make payments on the note.

Footnote 4: The dissent claims that "nothing in the record leads to the conclusion that Phillips knew Weiss intended to foreclose when he executed the [CEMA], or that this was Phillips's motivation for signing [it]." Phillips, however, testified that after the deed was signed over to him, Weiss both called him and visited his office to inform him that he (Weiss) had lent $500,000 to Welch-Ford and Smith. Phillips also testified that his lawyer informed him that the loan was secured by a mortgage. Under the circumstances, it is very clear what motivated the parties into executing the CEMA. Given this testimony, there is no reasonable basis for the dissent to question Weiss's intent, particularly as both parties were represented by counsel when they executed the CEMA. Indeed, what the dissent finds troublesome, besides Phillips's lack of "formal education after the age of 14," is Phillips's alleged failure to "understand the [CEMA]" and that Phillips "signed it because his attorney ... told [him] to sign it and [he] signed it'." Whether Phillips has a viable legal malpractice claim against his lawyer has no bearing on the issues in this case.

Footnote 5: Here Weiss is both the owner of the note, as he executed the note and leant the money, as well as the "holder" of the note, as demonstrated by the CEMA, which Phillips executed, acknowledging Weiss' right under the note and mortgage.

Footnote 6: Weiss is the original lender. Standing usually becomes an issue when the plaintiff is not the original lender, but obtained its rights to the mortgage and note by, for example, an assignment. This complicates the issue of standing because it is very common in the mortgage industry for the original lender to sell or assign its mortgage rights to a third party, by the time a defendant defaults upon his/her payment obligations (see e.g. Wells Fargo Bank, N.A. v Marchione, 69 AD3d 204, 205-206 [2d Dept 2009]).
Footnote 7: Real Property Law § 266 protects the title of a bona fide purchaser or encumbrancer unless he or she had previous notice of "the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

Footnote 8: The dissent mistakenly asserts that it is "the law of this case that the [CEMA] is ambiguous." The doctrine of law of the case provides that once an issue is judicially determined, it is not to be reconsidered by judges or courts of coordinate jurisdiction in the course of the same litigation (Martin v City of Cohoes, 37 NY2d 162, 165 [1975]; Kenney v City of New York, 74 AD3d 630 [1st Dept 2010]; New York State Thruway Author. v KTA-Tator Eng. Servs, P.C., 78 AD3d 1566, 1567(4th Dept 2010); Gould v International Paper Co., 223 AD2d 964, 965 [3d Dept 1996], lv denied 88 NY2d 808 [1996]). Thus, the trial court's finding of ambiguity on a prior motion does not constitute law of the case with respect to this Court and is not binding on the Appellate Division.

Footnote 1:Phillips testified that he did so because he needed funds to renovate a property he owned at 8 West 130th Street, but he was unable to qualify for a mortgage. Once the Property had been transferred to McCarthy's name, she took out a loan for $208,000 secured by a mortgage on the Property (the 1999 Mortgage). Phillips used those funds to make repairs on 8 West 130th. He then intended to take out a mortgage on 8 West 130th and use the proceeds to pay off the 1999 Mortgage, at which time he would ask McCarthy to transfer the Property back to him. 

Footnote 2:At that time, Phillips continued to believe that Drakes was his attorney. However, Drakes had been suspended from the practice of law for a period of two years commencing April 1, 2004 (Matter of Drakes, 60 AD3d 153, 155 [2d Dept 2009]). In 2009, Drakes was disbarred for, inter alia, conversion of client funds, appearing for Phillips at the mortgage closing, and depositing the proceeds into his attorney escrow account during the period of his suspension (Matter of Drakes, 60 AD3d 153).

Footnote 3:The order appealed from states incorrectly that this deed transferred the Property to Welch-Ford and Smith.

Footnote 4:Phillips testified that he "dropped" this action after speaking with McCarthy and becoming convinced that she had not been part of a scheme to deprive him of his rights to the Property, as he had believed when he commenced the action. There is no evidence in the record before us that Phillips abandoned this action because McCarthy "agreed to sue Welch-Ford and Smith to recover the property from them," as the majority writing states. Indeed, McCarthy's suit against Smith and Welch-Ford was not commenced until nearly two years after dismissal of Phillips's suit against McCarthy.

Footnote 5:The order appealed from states that "plaintiff provides a copy of the mortgage and note," but the Note is not in the record. From context, it appears that the motion court was referring not to the Note but to the 2009 Mortgage and Note Extension and Modification Agreement (EMA), discussed infra.

Footnote 6:This is consistent with Phillips's testimony at his deposition that one unit was occupied by a long-time tenant and her husband, the other units were occupied by Phillips's cousin and Phillips's stepdaughter, and that Phillips stayed at the Property on weekends and stored his work tools there.

Footnote 7:Fiveson had represented Phillips in a 2007 action against Drakes in which he obtained a judgment that was later vacated. In addition, since 1990, Fiveson had represented the company that insured title in connection with the Mortgage.

Footnote 8: The description of the relief sought is taken from the complaint in the McCarthy action, which is not in the record before us, but was available on the court website. The order appealed from incorrectly states that the index number was 10017/07 and that Phillips was a party to the McCarthy action.

Footnote 9:The majority states that Phillips did so when he "learned of Weiss's intention to foreclose on Phillips's reclaimed property." However, nothing in the record leads to the conclusion that Phillips knew Weiss intended to foreclose when he executed the EMA, or that this was Phillips's motivation for signing. Indeed, Phillips testified that, even at the time of his deposition in this case, he did not understand the EMA, and that he signed it because his attorney, whom Phillips believed had prepared the EMA, "told me to sign it and I signed it."

Footnote 10:Fiveson also testified that Phillips "is not a man that understands legal terms."

Footnote 11:Although plaintiff's counsel refers to the "amended verified complaint," the amended complaint contained in the record is not verified.

Footnote 12:The majority states that accrued principal and interest on the 1999 mortgage taken out in McCarthy's name totaled $450,000 at the time McCarthy's suit against Smith and Welch-Ford was settled. However, there is no evidence in the record of this, other than Fiveson's deposition testimony from his memory, which he himself acknowledged was not reliable, stating, "if my memory serves me correctly . . . ." Even plaintiff alleges that the accrued balance on the 1999 mortgage totaled not more than $350,000.

Footnote 13: Seaway Capital Corp. v 500 Sterling Realty Corp. (94 AD3d 856 [2d Dept 2012]) does not support the position for which the majority cites it. That decision merely recites that the plaintiff established its right to summary judgment "by submitting proof of the existence of the mortgage and note . . . certain forbearance agreements, and the default of [defendant]" (id. at 856). The Second Department does not specify what proof of the note was offered in Seaway, and it is possible the proof was the note itself. That case certainly does not hold that a forbearance agreement signed by a person who was not a party to the note and has never seen it, standing alone and in the absence of the note, is sufficient proof of the note's existence and terms. Nor does Seaway hold that the absence of deposition testimony challenging the note constitutes proof of its existence and terms.

Footnote 14: My colleagues in the majority are correct that this particular risk is not present for Phillips, since he is not liable on the Note. However, he is certainly at risk of losing his property based on the alleged breach of a note that may never have been executed, the terms of which remain unknown, which purports to arise from a loan nobody claims to have made, and which may not exist at all.

Footnote 15:Fiveson testified that he had no specific recollection of what he said to Phillips about the EMA, but acknowledged that Phillips must have signed it in his office because his signature was notarized by Fiveson's employee. However, Fiveson also testified that the settlement "went beyond the scope of my Retainer Agreement with" Phillips, so it is not clear what Fiveson's role was with regard to the EMA.

Footnote 16:Contrary to the majority's characterization of my position, I do not find that plaintiff is not a bona fide encumbrancer; rather, it is my view that Phillips has raised material questions of fact about whether plaintiff is a bona fide encumbrancer, thus precluding summary judgment in his favor.